**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DENNIS CAUCHON, | : | Case No. 2:25-cv-00075 |
| | : | |
| Plaintiff, | : | Judge Edmund A. Sargus, Jr. |
| | : | |
| v. | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| DWAYNE STEWARD, *et al.*, | : | |
| | : | |
| Defendants. | : | |

# PLAINTIFF'S SUMMARY-JUDGMENT EXHIBIT 31

## HRO INVESTIGATOR (NELSON) REPORT — EXCERPTS

**HRO_001398–399, 001408–409, 001423, 001427–430**

Submitted in Support of Plaintiff's Motion for Partial Summary Judgment

LAW OFFICE OF
MARITZA S. NELSON, LLC

Phone: 614.944.5171
4200 Regent St., Ste. 200
Columbus, OH 43219

**Privileged and Confidential**

**Attorney-Client Privilege**

**Attorney Work Product**

To: Board of Directors of Harm Reduction Ohio ("**HRO**")

From: Maritza S. Nelson, Law Office of Maritza S. Nelson, LLC

Date: October 9, 2024

Re: HRO's internal investigation of alleged conflicts of interest, hostile work environment and retaliation claims

---

## Table of Contents

***I. BACKGROUND*** ..... ***2***

***II. INVESTIGATIVE ACTIVITIES*** ..... ***2***

*A. Scope of Investigation* ..... *2*

*B. Witnesses Interviewed* ..... *3*

*C. Materials Reviewed* ..... *4*

***III. FACTUAL FINDINGS*** ..... ***6***

*A. Timeline* ..... *6*

*B. Amanda Lynn's Alleged Conflict of Interest* ..... *10*

*C. Dennis' Retaliation Claim* ..... *17*

[redacted]

***IV. LEGAL CONCLUSIONS*** ..... ***26***

*A. AmandaLynn's Alleged Conflict of Interest* ..... *26*

[redacted]

LAW OFFICE OF
MARITZA S. NELSON, LLC

Phone: 614.944.5171
4200 Regent St., Ste. 200
Columbus, OH 43219

[redacted]

*E. Retaliation* ........ *30*

***V. RECOMMENDATIONS*** ........ ***32***

[redacted]

*B. Personnel Recommendations* ........ *33*

[redacted]

## I. BACKGROUND

HRO retained the Law Office of Maritza S. Nelson, LLC ("**MSN Law Office**") to conduct an internal investigation of:

- a potential conflict of interest accusation made by HRO's Founder and Executive Director, Dennis Cauchon[1], against AmandaLynn Reese, HRO's Chief Program Officer;
- [redacted]
- [redacted]

The purpose of the internal investigation is to provide legal advice to HRO. HRO initiated the investigation because Dennis reported the alleged conflict of interest to the Ohio Department of Health ("**ODH**"), a major funder of HRO, without conducting a formal investigation and against the Board's advice and guidance. Following Dennis' report to ODH, Dennis unilaterally placed AmandaLynn on administrative leave. AmandaLynn then submitted her formal grievance to the Board, and similar complaints soon followed from Kelsey, Molly and Shae. HRO anticipated litigation at the time it retained counsel.

## II. INVESTIGATIVE ACTIVITIES

### A. Scope of Investigation

On or about September 13, 2024, HRO retained MSN Law Office to conduct this internal investigation. No representative of HRO reviewed or edited this report. The report represents the independent opinions of Maritza S. Nelson, Esq. and their colleagues. In addition to Maritza S.

[1] Because everyone within the organization operates on a first name basis, we will refer to HRO employees and board members by their first names throughout this report to avoid any confusion.

LAW OFFICE OF
MARITZA S. NELSON, LLC

Phone: 614.944.5171
4200 Regent St., Ste. 200
Columbus, OH 43219

us that he was unaware of any official HRO policies regarding outside employment and that HRO has never defined the term "conflict of interest." Cecile also stated that HRO's policy on conflicts of interest was vague. Jen recalled signing the conflict form that was sent out but was not aware of any policies against having a second job. Similarly, AmandaLynn told us that HRO did not have a conflict of interest policy until Dennis created one after their July conversation.

In applying for the ODH naloxone distribution contract, HRO was required to "include a statement indicating whether [HRO] or any people that work on the Project through [HRO] have a possible conflict of interest (e.g., employed by the State, etc.) and, if so, the nature of that conflict. The State has the right to reject a Proposal in which a conflict of interest is disclosed or cancel the Contract if any interest is later discovered that could give the appearance of a conflict." We did not find anything else in the documents related to the naloxone distribution contract that otherwise defined "conflict of interest."

Dennis told Cecile that he learned about AmandaLynn's alleged conflict from her social media posts and that he investigated further on his own. (AmandaLynn confirmed that this is what Dennis told her as well.) He told her that he was worried that AmandaLynn's consulting decisions would influence her ordering decisions for HRO and that AmandaLynn's "lobbying" work would hurt HRO's reputation within the broader harm reduction community.

On or around July 17, Dennis had a conversation with AmandaLynn about her work for Velocity and the potential conflict of interest. According to Cecile, Dennis told AmandaLynn that her work for Velocity would be "water under the bridge" so long as AmandaLynn resigned from her consulting position. AmandaLynn described this and her subsequent interactions with Dennis as hostile, unprofessional and intimidating. According to AmandaLynn, Dennis was agitated and emotional from the very beginning of their conversation, immediately demanding that she answer for her work with Velocity and an unrelated nonprofit organization, On the Front Lines. AmandaLynn did not feel like Dennis was giving her a chance to participate in the conversation or explain her role at Velocity. Throughout the conversation, Dennis described feeling betrayed and hurt. At the end of the conversation, Dennis gave AmandaLynn a short deadline to "make a decision."

Following Dennis' conversation with AmandaLynn, he told Cecile that he was expecting AmandaLynn to step down from the other groups she was involved with, but he "wanted to make sure that's of her own volition." He also told Cecile that he made some suggested changes to the proposed conflict policy. In addition to potential financial conflicts, he wanted to address "alignment conflicts, particularly areas in which HRO's reputation and efforts may conflict with the financial interests of [*sic*] policies of others." He concluded his email to Cecile by telling her that HRO needed to have a simple form for reporting potential conflicts annually or when they arise. Cecile suggested using a Google form that would go to her and Dennis and then Dennis could make a decision about what was reported. Around this same time, Cecile, who told us that she had no background in HR and had been learning as she goes, was revising the employee handbook for Dennis. In response, Dennis took a template from Jotform and then adjusted it

LAW OFFICE OF
MARITZA S. NELSON, LLC

Phone: 614.944.5171
4200 Regent St., Ste. 200
Columbus, OH 43219

(https://form.jotform.com/241995895490173).[5] Here, Dennis defined a conflict as any situation in which "a person or close relative . . . is involved in an organization, transaction, event or relationship that may be relevant to an employees' duties or the mission of Harm Reduction Ohio."[6]

On July 23, Dennis emailed AmandaLynn: "Don't forget to let me know what you decided."

In his August 19 email to Dwayne, Dennis insisted that the HRO staff needed to submit conflict forms by Friday, August 23. Dennis wrote:

We cannot delay this. The ODH contract required us to submit a statement listing all people working on the contract for HRO who may have a conflict or possible conflict . . . . I do not think it's likely this conflict or possible conflict would affect the ODH contract, but that's not our decision. We are required to report all conflict and possible conflicts when we learn of them. [AmandaLynn's] paid work for the advocacy firm is clearly a possible conflict . . . . We need to disclose conflicts promptly as part of this renewal.

In response, Dwayne argued that HRO should not send ODH "anything that would jeopardize the contract over an unproven conflict." Dwayne also stated that the ODH documentation did not require reporting "perceived conflicts."[7] Dwayne also expressed concern that the conflict of interest form Dennis created was targeted at AmandaLynn ("a female over the age of 40") rather than aimed at all employees. "If this is truly an issue, then EVERY employee that has a second job, has served on a board, or crossed paths in any way with a company that distributed naloxone would need to also be reported." Because of this, "an employee law attorney really needs to take a look at this first."

Dennis wrote back, acknowledging that HRO needed "to know the details" surrounding AmandaLynn's work for Velocity "before we can make a decision." However, Dennis was worried that AmandaLynn had "declined to disclose details of her work." Dennis then reiterated, "We need facts before we make a decision" and suggested that attorney David Ball "do the fact-finding and provide a report." He also suggested additional attorneys if Attorney Ball was not available.

Cecile confirmed that after consulting an attorney, Dennis was satisfied that everything should remain status quo until an internal investigation was conduct. In his emails, Dennis repeatedly stated that everything should remain "status quo" until Attorney Ball finished reviewing the updated employee handbook, conflict of interest policy, and conflict disclosure form. His emails indicated that it was especially important to maintain the status quo and keep all employees

---

[5] The form was later moved to Google docs but remained substantially the same (https://docs.google.com/forms/d/e/1FAIpQLSeh5Vbget64iDx8Xy6rUObmszgpC8IhzM0sYjqDggtJTqQvnw/viewform). We could not determine what specific form Dennis used because JotForm provides several conflict of interest templates.

[6] By this definition, nearly everyone involved with HRO has a conflict because nearly everyone at HRO is involved in another organization that might be relevant to their duties or the mission of HRO.

[7] The language in the contract documents did require reporting any "possible conflict."

LAW OFFICE OF
MARITZA S. NELSON, LLC

Phone: 614.944.5171
4200 Regent St., Ste. 200
Columbus, OH 43219

[redacted]

[redacted]

[redacted]

[redacted]

## IV. LEGAL CONCLUSIONS

[redacted]

### A. AmandaLynn's Alleged Conflict of Interest

AmandaLynn's work for Velocity does not present a conflict of interest with HRO's work on naloxone distribution. It is understandable how her work with Velocity might be perceived as a "possible conflict" if the only known facts were that she had a government advocacy position with Velocity, a known lobbyist for Hikma Pharmaceuticals, the manufacturer of Kloxxado. But a simple, professional conversation with AmandaLynn and Mallory would have quickly cleared up any lingering doubts or suspicions about AmandaLynn's role with Velocity.

It is difficult to reach any conclusion regarding what initially made Dennis so upset in July when he claims that he first learned AmandaLynn had a position with Velocity, a claim we find highly unlikely. But consistent with the employees' statements, it seems likely that Dennis simply dug his heels in. He had already taken the position that he was right and AmandaLynn was wrong, and there could be no backing him down from that position. From July to his report to ODH in September, Dennis' position progressively escalated:

LAW OFFICE OF
MARITZA S. NELSON, LLC

Phone: 614.944.5171
4200 Regent St., Ste. 200
Columbus, OH 43219

[redacted]

## E. Retaliation

Retaliation, in the legal context, occurs when an employer harasses, discriminates against, or otherwise punishes an employee for engaging in a *protected* activity. Simply complaining about an employer's decision or general behavior is not, in and of itself, a protected activity that can give rise to a retaliation claim. Instead, protected activity, for the purposes of a retaliation claim, is expressly defined by various statutes. In general, federal statutes protect employees who report an employer's criminal activity to authorities.[31] Title VII further states that it is unlawful for an employer to take an adverse employment action against an employee because they made a complaint under Title VII or supported or assisted in an investigation related to such a complaint.[32] Title VII retaliation claims require proof that the alleged unlawful retaliation would not have occurred in the absence of the alleged wrongful action of the employer.[33]

---

[redacted]

31 See https://www.whistleblowers.gov/sites/wb/files/2024-09/Whistleblower-Statutes-Summary-Chart.pdf for a comprehensive summary of federal whistleblower statutes.

32 42 U.S.C. § 2000e-3(a).

33 *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

LAW OFFICE OF
MARITZA S. NELSON, LLC

Phone: 614.944.5171
4200 Regent St., Ste. 200
Columbus, OH 43219

Under Ohio's whistleblower statute, an employer cannot take disciplinary action against an employee for reporting criminal activity of the employer or a fellow employee.[34] Ohio's law is further limited—not only is an employee only protected as a whistleblower when they report violations of specific statutes, but they must also follow a very specific reporting procedure. The law also explicitly denies whistleblower protections to employees who fail to "make a reasonable and good faith effort to determine the accuracy of any information reported…"[35]

[redacted]

Dennis has alleged that HRO engaged in retaliation by placing him on administrative leave in response to his act of reporting a suspected conflict of interest to ODH. His claim must be viewed in the larger context of the law on wrongful termination.

Generally, Ohio law recognizes the at-will employment doctrine and grants employers the freedom to terminate employment relationships for any or no reason. However, the Ohio Supreme Court also recognizes an exception to the doctrine when an at-will employee is fired for a reason that is against clear public policy.[36] At least one Ohio court has acknowledged that an employee may be protected when they are fulfilling their fiduciary or ethical duties by raising concerns to the company. [37] However, that court also declined to protect an employee who repeatedly raised such claims after the company and its attorney determined that they were without merit.[38]

While Dennis did not technically comply with the Ohio whistleblower statute when he wrote the letter to ODH (and he was not engaging in any federally protected activities at the time), an Ohio court is likely to at least consider the argument that an employee's act of reporting a suspected conflict of interest should be treated as a protected activity. Dennis could make the argument that he was trying to fulfil his ethical and fiduciary duties. He tried to report his concerns to the Board, but that the Board would not take action. However, his argument would be undermined by the fact that the Board had engaged Attorney Ball on Dennis' own recommendation and the fact that Dennis ignored Attorney Ball's advice on the matter and turned to Chat GPT instead.

---

[34] O.R.C. § 4113.52

[35] O.R.C. § 4112.52(C)

[36] *Greenley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228 (1990).

[37] *See, e.g., Urda v. Buckingham, Doolittle, & Burroughs*, 2006-Ohio-6915, P30.

[38] *Id.*

LAW OFFICE OF
MARITZA S. NELSON, LLC

Phone: 614.944.5171
4200 Regent St., Ste. 200
Columbus, OH 43219

In determining whether an employee has been wrongfully terminated, Ohio courts consider:

1. Whether a clear public policy exists and is manifested in Ohio's laws, constitution, or common law;
2. Whether dismissing the employee under the circumstances would jeopardize the public policy;
3. Whether the employee's dismissal was motivated by conduct related to the public policy; and
4. Whether the employer lacked an overriding legitimate business justification for dismissing the employee.

Even if a court decides that encouraging directors and employees of a nonprofit organization to make conflict of interest reports is a cognizable public policy, HRO could still argue that it had an overriding legitimate business justification for placing Dennis on leave. HRO's 2022 employee handbook requires all HRO directors and employees to "practice honesty and integrity." HRO's whistleblower policy further required that all reports be made *in good faith* and based on *reasonable grounds*. Not only was Dennis' letter to ODH wildly inaccurate, but it is simply impossible to believe that he was acting in good faith when he chose to rely on Chat GPT over HRO's actual attorney. And when he sent the letter to ODH, Dennis did so despite knowing that HRO needed "to know the details . . . before we can make a decision." Per HRO's whistleblower policy, "Any allegations that prove not to be substantiated and which prove to have been made maliciously or knowingly to be false will be viewed as a serious disciplinary offense."

**V. RECOMMENDATIONS**

[redacted]

[redacted]

[redacted]

[redacted]

LAW OFFICE OF
MARITZA S. NELSON, LLC

Phone: 614.944.5171
4200 Regent St., Ste. 200
Columbus, OH 43219

[redacted]

[redacted]

**B. Personnel Recommendations**

Dennis Cauchon should be terminated and removed from the Board. Dennis' behavior clearly warrants termination. We do not see any viable path forward that would create a serious change in Dennis' behavior and attitudes and allow Dennis to remain at HRO in any capacity. Nevertheless, se suspect that he will not go quietly and without threatening or pursuing legal action. While we believe HRO can defend itself against any claims of retaliation or wrongful termination that Dennis might attempt to bring it, the Board must also consider the fact that litigation is incredibly time consuming and expensive. And given Dennis' background in journalism, he would almost certainly endeavor to present his case in the media just as much as he would try to make his case in court.

It is also rather unusual for a nonprofit's executive director to also having a voting role on the board of directors. Here, there has been quite a bit of confusion and conflicting information about whether Dennis actually has a vote on the HRO Board. Regardless, as a compensated employee, he cannot serve as an independent voting member of the Board when it comes to decisions about his employment. To the extent that Dennis is a voting member outside of his capacity as an employee/President, then the Board should consider voting to remove him as a director pursuant to Article III, Section 9: After providing two weeks' notice of a regular or special board meeting, "a board member may be removed for reasons other than excessive absences "by a three-fourths vote of the remaining directors."

AmandaLynn should be reinstated as soon as possible. Given that AmandaLynn does not actually have a conflict of interest, she should be reinstated. However, in order to do so, the Board will need to share some of the findings from this investigation with ODH. In order to preserve attorney-client privilege with respect to the other matters in this report, please do not share the entire report with ODH. The Board may cut out portions relevant to the conflict of interest portion of the investigation to present to the ODH. Better still, we can "ghost write" a letter for the Board to send to ODH explaining the relevant findings.

[redacted]

[redacted]



Sophisticated Legal Counsel for Serious Entrepreneurs
www.msnlawoffice.com