**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DENNIS CAUCHON, et al.** | : | **CASE NO. 2:25-cv-00075** |
| | : | |
| **Plaintiff,** | : | **JUDGE: Edmund A. Sargus** |
| | : | **Magistrate: Chelsey M. Vascura** |
| **v.** | : | |
| | : | **COUNTERCLAIM DEFENDANT** |
| **DWAYNE STEWARD, et al.** | : | **DENNIS CAUCHON'S MOTION FOR** |
| | : | **SUMMARY JUDGMENT ON** |
| **Defendants.** | : | **COUNTERCLAIM PLAINTIFF HARM** |
| | : | **REDUCTION OHIO'S** |
| | : | **COUNTERCLAIMS** |

Counterclaim Defendant Dennis Cauchon moves for summary judgment on the counterclaim asserted against him by Counterclaim Plaintiff Harm Reduction Ohio ("HRO"). A party may move for summary judgment on each claim or defense, or on part of each claim or defense, and the Court must grant summary judgment when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.

As shown in the accompanying memorandum, the Rule 30(b)(6) testimony, the deposition testimony of Amandalynn Reese, and the Bylaws confirm that HRO cannot produce evidence sufficient to prove essential elements of their counterclaims, including damages, unauthorized access, wrongful conduct, fiduciary breach, causation, and actionable interference or other pleaded elements. Mr. Cauchon therefore requests that the Court enter judgment in his favor, dismiss HRO's counterclaim with prejudice, and grant all further relief the Court deems just.

Respectfully submitted,

GARVEY | SHEARER | NORDSTROM, PSC

*/s/ David A. Shearer, Jr.*

David A. Shearer, Jr. (0070805)
2388 Grandview Dr.
Ft. Mitchell, KY 41017
t: 859.308.1490
f: 866.675.3676
dshearer@gsn-law.com
*Attorney for Counterclaim Defendant Dennis Cauchon*

# MEMORANDUM IN SUPPORT

## I. INTRODUCTION

This action arises from Counterclaim Defendant Dennis Cauchon's fulfillment of his duties as the founder and President of Harm Reduction Ohio ("HRO"). Upon discovering that HRO's Chief Program Officer, Amandalynn Reese, was simultaneously employed by Velocity Bio Group ("VBG"), a pharmaceutical consulting firm hired "on behalf of Hikma Pharmaceuticals" to promote its 8-milligram naloxone product, Kloxxado, and support its lobbying team, Cauchon took prompt, necessary steps to investigate and report this unaddressed conflict of interest to state funding authorities. In response, a subset of HRO's Board of Directors staged an improper governance takeover and launched a barrage of retaliatory counterclaims against Cauchon alleging defamation, computer crimes, civil theft, conversion, tortious interference, and declaratory judgment.

Each count of HRO's counterclaim fails as a matter of law. The threshold defect fatal to HRO's statutory and property-based claims is that Cauchon was never lawfully removed as President. Under R.C. Chapter 1702 and HRO's Bylaws, board meetings require mandatory two-week advance written notice. HRO's representative, Tasha Turner-Bicknell, and former Board Chair Dwayne Steward conceded under oath that the Board attempted to suspend and terminate Cauchon through unauthorized, unnoticed "emergency" sessions nowhere provided for in HRO's governing documents. Because these actions were *ultra vires* and legally void *ab initio*, Cauchon remained HRO's lawful President possessing full, ongoing authority under Bylaws Art. V, § 1 to manage corporate accounts, access digital systems, and pay organizational lease obligations. This continuous executive authority completely negates the threshold elements of unauthorized access, lack of consent, and criminal intent required under the counterclaim counts.

Furthermore, HRO's counterclaim collapses under the weight of its own admissions. Cauchon's characterization of Reese's dual role was substantially true based on VBG's explicit employment contract, and Turner-Bicknell admitted under oath that HRO suffered no lost clients, lost business, or quantifiable financial harm. Similarly, HRO's tortious interference claim (Count V) fails because neither the Ohio Department of Health ("ODH") nor Chase Bank breached or severed any relationship with HRO, and HRO's claim for Declaratory Judgment (Count VII) is wholly duplicative, moot, and legally unfounded. Because there is no genuine dispute of material fact and HRO cannot establish essential elements of any counterclaim count, Cauchon is entitled to summary judgment as a matter of law.

## II. STATEMENT OF FACTS

Dennis Cauchon founded HRO in 2017 as an Ohio non-profit corporation dedicated to reducing overdose deaths and supporting evidence-based drug policy. Def.'s Answer & Counterclaim ¶ 1; Cauchon Dep. 11:3-5, 13:14-15. Before HRO's incorporation, Cauchon personally purchased the organizational website domain name (harmreductionohio.org) with his own funds in 2016 or 2017, and merely permitted the entity to use the domain during his presidency. Cauchon Dep. 17:1-21, 18:3-18. In 2018, Cauchon recruited HRO's initial, uncompensated Board of Directors. Cauchon Dep. 15:8-25. On January 29, 2019, HRO formally adopted its Bylaws, which establish that the Board of Directors is responsible for overall policy and direction and delegates complete day-to-day operational and administrative responsibilities to the President. Bylaws Art. III, § 1, Art. V, § 1 (attached as Exhibit 2 to Plaintiff's Motion for Partial Summary Judgment); Cauchon Dep. 21:18-20, 23:4-10. Article III, Sections 3 and 10 of the Bylaws explicitly mandate that written notice of any regular or special meeting of the Board

of Directors must be sent to each board member at least two weeks in advance. Bylaws Art. III, §§ 3, 10.

HRO hired Amandalynn Reese in late summer 2020, and she eventually became Chief Program Officer. Reese Dep. 15:24-25, 27:16-19. In December 2022, while serving as HRO's CPO, Reese entered into a full-time employment agreement with Velocity Bio Group ("VBG"), a pharmaceutical consulting firm. Reese Dep. 20:10-14, 87:3-7; Reese Contracts (to be filed under seal pursuant to Protective Order). VBG's written employment agreement explicitly hired Reese "on behalf of Hikma Pharmaceuticals" as "Director of Government Advocacy" at a monthly salary of $10,416, later increased to $11,250, to achieve Hikma's business objectives and "support the Lobbyist team" promoting Hikma's 8-milligram naloxone nasal spray product, Kloxxado. Reese Dep. 39:20-40:3, 42:4-6, 45:16-18, 50:7-15, 51:11-13, 66:6-9, 67:13-16, 73:12-14; Resse Contracts. While receiving substantial compensation from VBG on behalf of Hikma, Reese simultaneously oversaw HRO's naloxone distribution programs and regularly submitted REDCap orders requesting thousands of boxes of Kloxxado from the State of Ohio under Project DAWN. Reese Dep. 121:6, 129:4-6, 131:4-16, 134:4-8, 135:16-20.

On July 15, 2024, Cauchon discovered Reese's employment with VBG on a public social media biography. Cauchon Dep. 60:20-61:7. Recognizing a severe potential conflict of interest, Cauchon immediately sought advice from Board Vice Chair Dwayne Steward and initiated inquiries with Reese regarding her VBG duties. Cauchon Dep. 63:8-25, 65:12-20; Steward Dep. 24:18-25. HRO's state grant contract with the Ohio Department of Health required prompt disclosure of actual or apparent conflicts of interest. Cauchon Dep. 99:3-23, 148:18-150:3. On August 26, 2024, Cauchon retained independent legal counsel, David Ball, to review HRO's employee handbook, conflict of interest policy, and reporting forms. Cauchon Dep. 113:9-13,

115:12-18. On September 3, 2024, following extensive research into federal grant disclosure regulations, Cauchon placed Reese on paid administrative leave and submitted a formal conflict disclosure letter to ODH. Cauchon Dep. 148:2-150:3, 176:6-22, 198:1-22.

Rather than addressing the conflict, board members Steward, Tasha Turner-Bicknell, and Billy Golden sought to delay and prevent reporting the conflict to ODH. Cauchon Dep. 93:2-14, 188:7-25, 201:24-202:20. On September 5, 2024, and November 4, 2024, a subset of the Board convened unnoticed, purported "emergency" sessions to suspend and issue a notice of termination to Cauchon. Def.'s Answer & Counterclaim ¶ 12; Cauchon Dep. 224:16-25, 230:16-22; Steward Dep. 38:13-19, 53:20-59:2 (attached to Plaintiff's Motion for Partial Summary Judgment as Exhibit 7). Cauchon received no two-week advance written notice of these meetings (to which he was entitled as a director), was intentionally excluded, and never executed a written waiver of notice. Cauchon Dep. 20:19-25, 232:12-22, 239:17-21. Both Turner-Bicknell and Steward conceded under oath that "emergency meetings" are nowhere defined, authorized, or provided for in HRO's Bylaws or written corporate policies. Bylaws Art. III; Turner-Bicknell Dep. 28:23-29:1, 32:23-24 (attached to Plaintiff's Motion for Partial Summary Judgment as Exhibit 6); Steward Dep. 56:16-17.

Advised by counsel that the Board's unnoticed "emergency" actions were legally void *ab initio* under R.C. Chapter 1702 and the Bylaws, Cauchon continued acting in his capacity as President to manage corporate affairs, maintain digital accounts, and pay HRO's ongoing Granville office lease obligations to Borough Company, LLC from HRO's primary Chase Bank account. Cauchon Dep. 229:19-25, 230:1-7, 232:12-22, 258:14-20, 260:1-5. In April 2025, through counsel, HRO fully retrieved all of its physical office property, furniture, printed materials, naloxone kits, and fentanyl test strips intact from the Granville office location. Def.'s Answer &

Counterclaim ¶ 23; Turner-Bicknell Dep. 58:20-24. HRO subsequently opened new bank accounts and a new QuickBooks account. Turner-Bicknell Dep. 83:17-23, 101:22-102:1. HRO's representative, Turner-Bicknell, admitted under oath that HRO cannot identify a single lost client, lost business opportunity, or quantifiable financial or reputational injury resulting from Cauchon's actions or communications. Turner-Bicknell Dep. 130:14-25, 132:11-25, 132:5-134:1.

## III. LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). And though the Court does not make credibility determinations, the nonmovant must do more than merely raise "the prospect of challenging a witness's credibility" to make a witness's credibility genuinely disputed. *Goodwin v. City of Painesville*, 781 F.3d 314, 323 (6th Cir. 2015). The nonmovant must "offer[] specific facts that call into question the credibility" of the witness. *Id.*

The movant has the "initial burden of showing 'the absence of a genuine issue of material fact,'" which may be met by pointing out to the court that the nonmovant has no evidence to support an essential element of her case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). Then the nonmovant must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Barr v. Lafon*, 538 F.3d 554, 561-62 (6th Cir. 2008) (quoting *Celotex Corp.*, 477 U.S. at 322-23).

## IV. ARGUMENT

### a. Dennis Cauchon's Statements Were Substantially True, Made Without Fault, and Caused No Proximate Injury.

"To establish defamation, the plaintiff must show: (1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the

plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 389, 2012-Ohio-4193 (citation omitted). "[I]t is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not." *Yeager v. Local Union 20, Teamsters*, 6 Ohio St.3d 369, 372 (1983). "In determining whether a statement is defamatory as a matter of law, a court must review…the totality of the circumstances" and by "read[ing] the statement[]…in the context of the entire [publication] to determine whether a [reasonable] reader would interpret [it] as defamatory." *Mann v. Cincinnati Enquirer*, 2010-Ohio-3963, ¶ 12 (1st Dist.) (citing *Scott v. News-Herald*, 25 Ohio St.3d 243, 253 (1986), and *Mendise v. Plain Dealer Pub. Co.*, 69 Ohio App. 3d 721, 726, 591 N.E.2d 789 (8th Dist.1990).

Applying these principles, HRO fails to satisfy the essential elements of falsity, fault, or damages. Cauchon's statements regarding Amandalynn Reese's employment with VBG and her relationship to Hikma Pharmaceuticals were substantially true. VBG's written employment agreement explicitly hired Reese "on behalf of Hikma Pharmaceuticals" as "Director of Government Advocacy" at $10,416 per month to achieve Hikma's business objectives and "support the lobbyist team" promoting Hikma's 8-milligram naloxone nasal spray, Kloxxado. Reese Dep. 39:20-40:3, 42:4-7, 51:11-13, 67:10-70:15, 73:12-14. Because Reese simultaneously served as HRO's Chief Program Officer, submitting large orders for Kloxxado under state grants, Cauchon's characterization of her role as working for Klaxxado lobbyists, or as an unaddressed conflict of interest, constitutes a substantially true statement or non-actionable opinion based on fully disclosed facts. *Mann*, 2010-Ohio-3963, ¶ 12. Furthermore, Cauchon acted in good faith reliance on federal regulations mandating the prompt disclosure of actual or apparent conflicts of interest to state funding agencies. Cauchon Dep. 148:18-150:3, 153:2-10.

Finally, HRO cannot establish any proximate injury or actual damages. HRO's representative, Tasha Turner-Bicknell, admitted under oath that HRO cannot identify a single lost client, lost business opportunity, or quantifiable financial or reputational injury proximately caused by Cauchon's statements. Turner-Bicknell Dep. 130:14-25, 132:11-25, 132:5-134:1. Turner-Bicknell further conceded that Cauchon's September 3, 2024 letter to the Ohio Department of Health is not even a basis for HRO's defamation claim. Turner-Bicknell Dep. 134:15-23. Because HRO cannot prove falsity, fault, or damages as a matter of law, Cauchon is entitled to summary judgment on HRO's defamation counterclaim.

**b. Cauchon's Removal Was Legally Void *Ab Initio* Under R.C. Chapter 1702 and HRO's Bylaws.**

HRO violated its own Bylaws and non-profit corporate provisions under R.C. Chapter 1702 by terminating him through *ultra vires,* improperly noticed "emergency" meetings.

Under Ohio law, a non-profit corporation's bylaws constitute a binding contract between the corporation, its officers, and its directors. R.C. 1702.11(A); R.C. 1701.01. HRO's bylaws explicitly mandate that written notice of any regular or special meeting of the board of directors must be sent to each board member at least two weeks in advance. Bylaws Art. III, §§ 3, 10. Under R.C. 1702.31(A), board meetings must comply strictly with the notice requirements established in the corporate bylaws. Dwayne Steward admitted under oath that he did not always give the 14 days' notice required by the Bylaws when meetings were needed immediately, and both Steward and HRO's representative, Tasha Turner-Bicknell, acknowledged that the board convened short-notice "emergency" meetings regarding Mr. Cauchon. Turner-Bicknell Dep. 27:8-25, 32:6-10; Steward Dep. 55:4-10.

HRO cannot excuse its failure of notice by inventing an "emergency" exception. Both Turner-Bicknell and Steward conceded that "emergency meetings" are nowhere defined,

authorized, or provided for in HRO's bylaws or written corporate policies. Bylaws Art. III; Turner-Bicknell Dep. 28:23-29:1, 32:23-24; Steward Dep. 56:16-17. Under R.C. 1702.28, board action is valid only if adopted at a meeting held in accordance with the statute and bylaws, or by unanimous written consent. Because the bylaws contain no emergency notice waiver, the purported "emergency" sessions convened to oust Mr. Cauchon were *ultra vires* and legally void *ab initio*.

Under R.C. 1702.19, notice of a meeting is waived only if a director executes a written waiver before or after the meeting, or attends without protesting the lack of notice. Mr. Cauchon, an elected founding director and officer, was deliberately excluded from these sessions, received no written notice, and never executed a written waiver. Cauchon Dep. 233:12-22. Although Bylaws Art. III, § 9 and R.C. 1702.29 permit the removal of directors/officers, such removal must occur at a lawfully constituted meeting. Because the underlying meetings violated R.C. 1702.31, R.C. 1702.19, and Bylaws Art. III, §§ 3 and 10, Mr. Cauchon's removal was improper as a matter of law.

**i. Cauchon Is Entitled to Summary Judgment on HRO's Computer Fraud and Abuse Act ("CFAA") Claim (Count I).**

To establish a civil violation of the CFAA under 18 U.S.C. § 1030(a)(2)(C) or § 1030(g), a plaintiff must demonstrate that the defendant accessed a protected computer "without authorization" or "exceeds authorized access." Under *Van Buren v. United States*, 593 U.S. 374 (2021), an individual "exceeds authorized access" only if they access information on a computer system that they were categorically prohibited from obtaining. Where an individual holds lawful authority over a computer system or account, access to that system cannot form the basis of a CFAA violation. HRO's CFAA counterclaim alleges that Mr. Cauchon improperly accessed HRO's Chase Bank accounts, website, QuickBooks, and Facebook page following his purported

termination on November 4, 2024. However, because Mr. Cauchon's termination was legally invalid, HRO cannot satisfy the threshold statutory element of unauthorized access.

Because Mr. Cauchon remained HRO's lawful President at the time of the alleged accesses, his use of HRO's digital accounts was fully authorized as a matter of law. HRO cannot establish a genuine issue of material fact that Mr. Cauchon accessed any protected computer "without authorization" under 18 U.S.C. § 1030(a)(2)(C). Summary judgment must be granted in favor of Mr. Cauchon on Count I of HRO's Counterclaim.

**ii. Cauchon Is Entitled to Summary Judgment on HRO's Unauthorized Use Claim (Count II).**

To establish civil liability for unauthorized use of computer property under R.C. 2307.60 and R.C. 2913.04(A) or (B), HRO must prove that Mr. Cauchon knowingly used, operated, or gained access to HRO's computer systems, networks, or telecommunication property "without the consent of the owner or person authorized to give consent." HRO alleges that Mr. Cauchon engaged in criminal unauthorized use by accessing HRO's Facebook page, website, QuickBooks software, and Chase Bank accounts following his purported termination on November 4, 2024. However, R.C. 2307.60 requires proof of an underlying criminal act under R.C. 2913.04. Where an officer possesses ongoing, lawful corporate authority to access and manage organizational accounts, access to those systems is granted with the consent of the corporate entity as a matter of law.

A civil claim under R.C. § 2307.60 requires proving that the defendant committed a criminal violation with the requisite mental state. Under R.C. § 2913.04(A) and (B), the defendant must act "knowingly" without consent. Mr. Cauchon acted at all times under a *bona fide*, legally grounded belief that he remained HRO's rightful President and that the board's unnoticed "emergency" actions were legally invalid under R.C. Chapter 1702 and the bylaws. Cauchon Dep.

229:19-25, 230:1-7, 232:12-22, 267:15-20. Operating corporate systems under a legitimate claim of presidential authority negates the criminal *mens rea* required to violate R.C. § 2913.04.

HRO cannot establish that Mr. Cauchon used or accessed any computer, cable, or telecommunication property "without consent." Summary judgment must be granted in favor of Mr. Cauchon on Count II of the Counterclaim.

**iii. Cauchon Is Entitled to Summary Judgment on HRO's Civil Theft Claim (Count III).**

Cauchon is entitled to summary judgment on Count III of HRO's Counterclaim because HRO cannot establish the essential elements of civil theft under Ohio law. R.C. 2913.02(A) provides that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) [w]ithout the consent of the owner or person authorized to give consent; (2) [b]eyond the scope of the express or implied consent of the owner or person authorized to give consent; (3) [b]y deception; (4) [b]y threat; (5) [b]y intimidation." HRO alleges that Cauchon committed civil theft by exerting unauthorized control over HRO's bank accounts, website domain, QuickBooks software, Facebook page, and physical office space following his purported termination on November 4, 2024. However, because Cauchon's purported removal was legally void *ab initio*, and because Cauchon acted at all times with lawful authority and without a criminal purpose to deprive, HRO's civil theft claim fails as a matter of law.

As a threshold matter, HRO cannot establish that Cauchon exerted control over corporate property "[w]ithout the consent of the owner" or "[b]eyond the scope of…consent" under R.C. 2913.02(A)(1) or (2) because Cauchon's executive authority as President was never lawfully revoked. Because Cauchon served as HRO's authorized executive officer, his access to and management of corporate property occurred with express corporate consent, defeating R.C.

2913.02(A)(1) and (2). Furthermore, as to the website domain name (harmreductionohio.org), Cauchon personally purchased and acquired the domain using his own funds in 2016 or 2017, before HRO's incorporation, meaning HRO cannot demonstrate that Cauchon exerted control over property belonging exclusively to HRO. Cauchon Dep. 17:1-21, 18:3-18.

Additionally, HRO cannot establish that Cauchon acted with the requisite criminal *mens rea*, specifically, acting "knowingly" with the "purpose to deprive the owner of property" under R.C. 2913.02(A). A civil theft claim under R.C. 2307.60 requires proof that the defendant committed a criminal violation with purpose to deprive. Cauchon acted at all times under a *bona fide*, legally grounded belief that he remained HRO's rightful President and that the Board's unnoticed "emergency" actions were legally invalid under R.C. Chapter 1702 and the corporate Bylaws. Cauchon Dep. 233:9-32. Finally, HRO has produced no evidence demonstrating that Cauchon obtained or exerted control over any property by deception, threat, or intimidation under R.C. 2913.02(A)(3), (4), or (5).

Because Cauchon possessed lawful corporate consent as HRO's President, holds personal ownership over the website domain, and lacked any criminal purpose to deprive, HRO cannot establish a genuine issue of material fact as to any violation of R.C. 2913.02(A). Cauchon is therefore entitled to summary judgment on Count III of HRO's Counterclaim.

#### iv. Cauchon Is Entitled to Summary Judgment on HRO's Conversion Claim (Count IV).

Cauchon is entitled to summary judgment on Count IV of HRO's Counterclaim because HRO cannot establish the requisite elements of conversion under Ohio law. "Conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner or withholding it from the owner's possession under a claim inconsistent with his rights." *State ex rel. Toma v. Corrigan*, 92 Ohio St.3d 589 (2001) (citation omitted). Here, HRO's conversion claim

alleges three categories of property: digital and online accounts, general corporate bank funds, and physical office items. As a matter of law, each category fails.

As a threshold matter, HRO's conversion claim across all three property categories relies entirely on the premise that Cauchon's executive authority was revoked by the Board of Directors on November 4, 2024, rendering his continued exercise of control over HRO property "wrongful." However, as demonstrated above, Cauchon's purported removal as President was *ultra vires* and legally void *ab initio*. Because Cauchon was never lawfully removed, he maintained full authority under Bylaws Art. V, § 1. This ongoing presidential authority defeats HRO's conversion claim across each alleged category of property.

Additionally, HRO's claim that Cauchon converted its online resources, including its website, email domain, Facebook page, and software log-in credentials, fails because HRO cannot show ownership to the exclusion of Cauchon or a wrongful exercise of dominion over its property. With respect to the organizational website domain name (harmreductionohio.org), Cauchon personally purchased and acquired the domain name using his own funds in 2016 or 2017, before HRO's incorporation, and merely permitted HRO to use the domain during his presidency. Cauchon Dep. 17:1-21, 18:3-18. Because Cauchon personally owns the domain name, HRO lacks exclusive ownership rights. Furthermore, Cauchon's access to digital credentials and administrative rights to organizational platforms maintained during his tenure as President does not constitute a wrongful exercise of dominion or a withholding of property from the owner's possession under a claim inconsistent with HRO's rights.

Next, HRO's conversion claim regarding the transfer of funds from its Chase Bank checking account to Borough Company, LLC for office lease payments fails because Cauchon did not wrongfully exercise dominion over HRO's funds. These expenditures were corporate lease

payments made from HRO's primary checking account to pay rent for the organization's physical operating premises in Granville. Utilizing corporate account funds to satisfy rental obligations for the organization's office space pursuant to presidential authority under Bylaws Art. V, § 1 does not constitute a wrongful exercise of dominion over property to the exclusion of HRO's rights, nor is it withholding property under a claim inconsistent with the owner's rights.

Finally, HRO's conversion claim regarding physical office property, including printed materials, furniture, naloxone kits, and fentanyl test strips, fails because Cauchon did not wrongfully withhold these items from HRO's possession. As founder and President, Cauchon originally held lawful custody of HRO's physical office property. Def.'s Answer & Counterclaim ¶ 17. Moreover, HRO admits that in April 2025, Cauchon permitted HRO to retrieve all of its physical property, furniture, printed materials, naloxone kits, and fentanyl test strips intact from the Granville office location. Def.'s Answer & Counterclaim ¶ 23; Turner-Bicknell Dep. 58:24-59:2. Because HRO has fully recovered its physical property, Cauchon is not exercising dominion over the goods, nor is he withholding them from HRO's possession under a claim inconsistent with its rights.

Because Cauchon holds individual ownership over the website domain name, the corporate bank funds were expended for legitimate HRO lease obligations under presidential authority, and HRO has fully retrieved all of its physical office property, HRO cannot establish that Cauchon wrongfully exercised dominion or withheld property in a manner inconsistent with HRO's rights. Cauchon is therefore entitled to summary judgment on Count IV of HRO's Counterclaim.

**v. Cauchon Is Entitled to Summary Judgment on HRO's Tortious Interference Claim (Count V).**

In Ohio, the elements of tortious interference with a business relationship are: "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference

causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F. Supp. 2d 942, 949 (S.D. Ohio 2003) (quoting *Barilla v. Patella*, 144 Ohio App. 3d 524, 760 N.E.2d 898, 904 (Ohio Ct. App. 2001)). Tortious interference must be intentional because "Ohio does not recognize negligent interference with a business relationship." *Diamond Wine & Spirits v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App. 3d 596, 604, 2002-Ohio-3932 (3d Dist.).

HRO alleges in its Counterclaim that Cauchon tortiously interfered with its ongoing business relationships and expectancies with third parties, specifically identifying Chase Bank, N.A. and ODH, by making false statements, improperly conducting transactions, or threatening third parties not to do business with HRO. However, the undisputed material facts in the record confirm that HRO cannot prove an intentional interference causing a breach or termination of any relationship, nor can it establish any resulting damages.

First, regarding HRO's relationship with ODH, HRO cannot establish that Cauchon caused a breach or termination of the relationship, or that his actions were legally improper. Cauchon's September 3, 2024 letter to ODH regarding Amandalynn Reese's outside employment with VBG was submitted in his capacity as HRO's President and in good-faith reliance on federal grant regulations mandating the prompt disclosure of actual or apparent conflicts of interest. Cauchon Dep. 148:18-150:3. More importantly, Cauchon's communications did not cause any breach or termination of HRO's relationship with ODH. Rather, ODH actually finalized and renewed HRO's grant contract on August 29, 2024, and ODH continued its ongoing operational and funding relationship with HRO thereafter. Cauchon Dep. 121:4-12. Because ODH did not breach, terminate, or sever its contractual or business relationship with HRO, HRO cannot satisfy the third element of its tortious interference claim as a matter of law.

Second, regarding HRO's relationship with Chase Bank, N.A., HRO cannot show intentional interference that caused a breach or termination of the business relationship. Cauchon was a founding corporate officer and designated signatory on HRO's primary Chase Bank checking account. Communicating with Chase Bank or maintaining corporate account access under a *bona fide*, legitimate claim of presidential authority does not constitute intentional, improper interference. Furthermore, HRO produced no evidence showing that Chase Bank breached or terminated any banking agreement or relationship with HRO as a result of Cauchon's actions.

Third, HRO's tortious interference claim fails entirely on the element of damages. Under Ohio law, a plaintiff must prove actual, quantifiable damages resulting directly from the wrongdoer's interference causing a breach or termination of a business relationship. *Reed Elsevier*, 269 F. Supp. 2d at 949. Here, HRO's representative explicitly admitted under oath that HRO cannot identify a single lost client, lost business opportunity, or quantifiable financial injury proximately caused by Cauchon. Turner-Bicknell Dep. 131:9-20, 132:11-25, 133:1-7. Turner-Bicknell conceded that HRO cannot identify any lost clients or concrete financial damages resulting from Cauchon's conduct. Turner-Bicknell Dep. 130:14-134:1. Because Ohio law strictly requires proof of intentional interference causing an actual breach or termination and resulting proximate damages, the complete absence of evidentiary support for these essential elements entitles Cauchon to judgment as a matter of law.

Because Cauchon did not cause ODH, Chase Bank, or any third party to breach or terminate a business relationship with HRO, and because HRO admits it suffered no quantifiable damages or lost business prospects, Cauchon is entitled to summary judgment on Count V of HRO's Counterclaim.

**vi. Cauchon Is Entitled to Summary Judgment on HRO's Declaratory Judgment Claim (Count VII).**

Counterclaim Defendant Dennis Cauchon is entitled to summary judgment on Count VII of Counterclaim Plaintiff Harm Reduction Ohio's ("HRO") Counterclaim for Declaratory Judgment. Under 28 U.S.C. § 2201(a), "[i]n a case of actual controversy within its jurisdiction,…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

In Count VII of its Counterclaim, HRO seeks a judicial declaration that HRO is the owner of "HRO's Accounts," that Cauchon has no possessory interest in those accounts, that his retention of or access to the accounts is unlawful, and that he must immediately return and refrain from accessing HRO's accounts. Under the undisputed material facts in the record, the binding provisions of HRO's Bylaws, and Ohio non-profit corporate law under R.C. Chapter 1702, HRO is not entitled to declaratory relief, and Cauchon is entitled to summary judgment as a matter of law.

HRO's demand for a declaration that Cauchon's access to and retention of corporate accounts is "unlawful" fails on the merits because Cauchon remained HRO's lawful President at all relevant times. HRO's declaratory judgment count depends entirely on the premise that Cauchon was stripped of his executive authority on November 4, 2024, and thereafter improperly asserted control over corporate property. However, as explained above, Cauchon's removal was *ultra vires* and legally void *ab initio*. Consequently, Cauchon maintained full executive authority over HRO's day-to-day operations and corporate property pursuant to Bylaws Art. V, § 1. As HRO's lawful President, Cauchon possessed ongoing authority to manage and access corporate

accounts, rendering HRO's demand for a declaration of "unlawful" access and retention meritless as a matter of law.

Furthermore, HRO cannot obtain a declaration of exclusive ownership or an order compelling the surrender of the organizational website domain name (harmreductionohio.org). Cauchon personally purchased the domain name using his own funds in 2016 or 2017, before HRO's incorporation, and merely permitted HRO to use it during his presidency. Cauchon Dep. 17:1-21, 18:3-18. Because Cauchon holds individual ownership over the domain name, HRO cannot establish exclusive ownership or possessory rights under 28 U.S.C. § 2201. Finally, regarding HRO's banking and accounting platforms, HRO's representative admitted that HRO has already vacated and opened new bank accounts, established a new QuickBooks account, and fully regained physical control of its operating equipment. Turner-Bicknell Dep. 83:17-23, 101:22-102:1.

## V. CONCLUSION

For the reasons set forth above, Counterclaim Plaintiff Harm Reduction Ohio cannot produce evidence sufficient to establish a genuine issue of material fact on any essential element of its counterclaims. Because Cauchon's disclosures regarding Amandalynn Reese were substantially true and caused no proximate or quantifiable injury, HRO's defamation claim fails as a matter of law. Furthermore, because HRO's Board convened unauthorized, unnoticed "emergency" sessions in violation of R.C. Chapter 1702 and Bylaws Art. III, §§ 3 and 10, Cauchon's purported removal as President was *ultra vires* and legally void *ab initio*. As HRO's lawful President possessing continuous executive authority under Bylaws Art. V, § 1, Cauchon's management of corporate bank accounts, digital systems, and office facilities occurred with full corporate consent and authorization, defeating HRO's claims under the Computer Fraud and

Abuse Act, R.C. 2913.04, R.C. 2913.02 Civil Theft, and Conversion. These property claims independently fail because Cauchon holds personal ownership over the website domain name, general operating funds were properly expended for HRO's physical lease obligations, and all physical office goods were retrieved intact. Finally, because Cauchon caused no breach or termination of HRO's relationships with the Ohio Department of Health or Chase Bank, HRO's claim for Tortious Interference fails for lack of causation and damages, and its claim for Declaratory Judgment under 28 U.S.C. § 2201(a) is wholly duplicative and legally meritless.

Counterclaim Defendant Dennis Cauchon respectfully requests that this Court grant his Motion for Summary Judgment, enter judgment in his favor on all counts of Counterclaim Plaintiff Harm Reduction Ohio's Counterclaim, dismiss the Counterclaim with prejudice, and grant all further relief this Court deems just and proper.

Respectfully submitted,

GARVEY | SHEARER | NORDSTROM, PSC

*/s/ David A. Shearer, Jr.*

David A. Shearer, Jr. (0070805)
2388 Grandview Dr.
Ft. Mitchell, KY 41017
t: 859.308.1490
f: 866.675.3676
dshearer@gsn-law.com
*Attorney for Counterclaim Defendant Dennis Cauchon*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties of record through the Court's CM/ECF system. Parties may access this filing through the Court's CM/ECF system.

*/s/ David A. Shearer, Jr.*
David A. Shearer, Jr.