**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| *Dennis Cauchon, et al.*, | ) | Case No. 2:25-cv-00075 |
| | ) | |
| Plaintiffs, | ) | Judge Edmund A. Sargus, Jr. |
| | ) | |
| v. | ) | Magistrate Judge Chelsey M. Vascura |
| | ) | |
| *Dwayne Steward, et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Plaintiff's unnecessarily voluminous submission only further confirms that summary judgment in Defendants' favor should be granted without delay. Plaintiff tacitly concedes:

(1) **He lacked a subjective, good-faith belief** that an Anti-Kickback Statute ("AKS") violation was occurring as of September 3, 2024 (or at any time).

(2) **He lacked an objective, good faith belief** that an AKS violation was occurring as of September 3, 2024 (or at any time).

(3) **He lacks any evidence of retaliation** beyond baseless speculation. And

(4) **His declaratory judgment claims are based on a complete misreading of controlling Ohio law**, which imposes a "substantial compliance" standard.[1]

Moreover, this Court need not review the entire 400 pages of largely irrelevant "evidence" to come to any of these conclusions. As to Plaintiff's FCA claim, his September 3, 2024, letter to the Ohio Department of Health ("ODH")—his alleged "protected activity"—itself confirms that he did not have *either* a subjective or objective good-faith belief that Ms. Reese was engaged in federal fraud, which is fatal to his claim:

---

[1] *See Robb v. Chagrin Lagoon Yacht Club*, 75 Ohio St.3d 264, 268 (1996)

> Ohio's representative, has ordered approximately 15,000 Kloxxado kits from the state. At present, I have no reason to believe that AmandaLynn's outside contract influenced her ordering decisions.

(Cauchon I Dep., Ex. 18).[2] Stated differently, Plaintiff had no reason to believe **an Anti-Kickback violation was occurring**, **at any time**. *Id.* Plaintiff cannot "walk this back" by flooding this Court with irrelevant exhibits he was unaware of at the time of his disclosure. *Jones-McNamara v. Holzer Health Sys.*, 630 F. App'x 394, 401 (6th Cir. 2015). His FCA claim fails as a matter of law.

As to his declaratory judgment claims, it is hard to see how Plaintiff's request is anything more than an exercise in futility. Plaintiff's entire case is predicated on the incorrect notion that he was absolutely entitled to *fourteen* (14) days' instead of *twelve* (12) days' advance notice of the October 27, 2024, board meeting that removed him as an *alleged* "board member." But Ohio imposes a substantial compliance—not a strict compliance—standard, which Plaintiff entirely ignores. *Robb v. Chagrin Lagoon Yacht Club*, 75 Ohio St.3d 264, 268 (1996). And Plaintiff concedes—as he must—that: (1) he *requested* the meeting; (2) he had *actual notice* of the meeting; (3) he *appeared* at the meeting; (4) he had the unfettered ability to *voice all objections to his removal* at the meeting; and (5) all board members present unanimously voted him off. From there, Plaintiff's secondary position—that he could only be terminated ***if he signed his own termination letter***—is even more meritless and fails as a matter of law.

Finally, Plaintiff's request for this Court to alternatively decide "facts" is improper in this case and is a thinly veiled attempt to rehash his legal arguments. Such request is properly denied where, as here, the alleged facts are not material or are inextricably intertwined with matters that are substantially controverted by the parties.

---

[2] The two-volume transcript for Plaintiff's deposition shall be hereinafter referred to as "Cauchon I Dep." (Doc. # 102-1; and "Cauchon II Dep." (Doc. # 102-2), respectively.

As Plaintiff's motion for summary judgment is inextricably linked to Defendants' motion, which remains pending, (Doc. # 107), Defendants incorporate, as if fully rewritten herein, that motion, which provides several independent bases for the complete dismissal of Plaintiff's claims.

For these reasons, summary judgment should be granted without delay in favor of all Defendants and Plaintiff's claims dismissed, with prejudice.

## I. STATEMENT OF FACTS.

For brevity, Defendants incorporate the Statement of Facts presented to this Court in their Motion for Summary Judgment. (Doc. # 107, PageID # 2959-66). These are the material, undisputed facts necessary for a ruling on the parties' cross-motions.

It is simply not necessary for this Court to wade into Plaintiff's entire 52 page—456 pages inclusive of 66 exhibits—filing. (*See generally* Doc. # 101 and 101-1 through 101-66). To save the Court quite a bit of time, Defendants will refrain from going "line by line" addressing all 456 pages presented. Rather, Defendants will simply note that there are two broad categories of "evidence" that this Court can disregard in their entirety, as neither category is relevant and/or required for a decision on the motions before the Court.

***Post Hoc "Evidence" Plaintiff Presents in Support of His FCA Retaliation Claim***. First, any and all evidence Plaintiff presents in support of a "prima facie" FCA retaliation claim that **<u>was not known to Plaintiff</u>** at the time of his alleged "protected activity" on September 3, 2024, is properly disregarded. *See Jones-McNamara v. Holzer Health Sys*, 630 F. App'x 394, 401 (6th Cir. 2015) (holding that the test to prove an FCA retaliation claim is determined by "the facts in [plaintiff's]' knowledge **at the time [he] reported AKS violations**") (emphasis added). Plaintiff cannot attempt to "prove" an FCA retaliation claim in hindsight through after-acquired evidence.

*Id.*[3] Thus, a large swath of documents Plaintiff references in his motion that he received after September 3, 2024, are entirely irrelevant. This includes, without limitation: (1) Ms. Reese's employment contract with Velocity; (2) documents received by Plaintiff through a subpoena to Velocity in this litigation; (3) documents produced by Defendants, including internal communications and text message threads to which Plaintiff was *not* a recipient; (4) documents Plaintiff received by the State of Ohio through FOIA requests after the fact; and even (5) the deposition testimony of Ms. Reese, HRO, and/or Mr. Steward, as to documents or information that Plaintiff was not a recipient of or that occurred after September 3, 2024.

***Alleged "Evidence" in Support of Plaintiff's Position He Was a Former Director***. Second, Plaintiff dedicates an inordinate amount of time and page space attempting to prove he was once a director of HRO. (*See generally*, Doc. # 101-1, PageID # 1459-80). This issue—which is certainly disputed by the parties—is nonetheless immaterial. Defendants' motion for summary judgment as to Plaintiff's declaratory judgment claims **<u>does not require</u>** any finding by this Court as to Plaintiff's former status as an alleged board member. (Doc. # 107, PageID # 2980-86). Defendants' position is that— assuming *arguendo* Plaintiff was ever a board member—his claim still fails as (1) he was effectively removed on October 27, 2024; (2) he was not entitled to vote on his own administrative leave or termination as President; and (3) his vote would not have changed the outcome of any decision by the Board, anyway. (*Id.*). Thus, reviewing all this "evidence" is a waste of judicial resources.

At minimum, this Court should rule on Defendants' motion *first*, which will streamline this Court's review and decision on the issues presented in Plaintiffs' voluminous motion.

---

[3] This Court has already acknowledged this well-settled law when it denied Plaintiff's motion to compel Ms. Reese to produce documents related to her work at Velocity, explicitly holding that "only the evidence in an FCA retaliation plaintiff's possession **at the time of the alleged protected conduct is relevant**[.]" (Doc. # 61, PageID # 1200) (emphasis added) (citing *Jones-McNamara*).

## II. ARGUMENT

### A. Plaintiff's Request for Partial Summary Judgment as to his FCA Retaliation Claim Should be Denied.

#### 1. Plaintiff's Motion is Mooted by Defendants' Request for Summary Judgment as to the Multiple, Legitimate Reasons for His Termination and Lack of any Evidence of Pretext.

Federal law is clear that Plaintiff's FCA retaliation claim fails upon the presentation of legitimate, nonretaliatory reasons for his termination by his former employer. *See, e.g.*, *Buggs v. FCA US, LLC*, 2023 U.S. App. LEXIS 1591 (6th Cir. 2023) (affirming summary judgment where employer had a legitimate, nondiscriminatory reasons for terminating plaintiff).[4] Plaintiff does not move for summary judgment on this issue. (*See generally*, Doc. # 101). **Defendants do**. (*See* Doc. # 107, PageID # 2976-79). Thus, it is only logical that this Court resolve the threshold issues presented in Defendants' motion *first*, as it would obviate entirely the need to address Plaintiff's motion. *See Buggs*, 2023 U.S. App. LEXIS 1591 (dismissing claim even where a *prima facie* case was presented).

To that end, it is not surprising that Plaintiff ignores entirely the actual reasons for his termination, including: (1) his repeated, documented, and irrefutable insubordination toward the Board; (2) his refusal to participate in an independent investigation by HRO's counsel of several hostile work environment and discrimination claims brought against him; (3) his refusal to comply with his administrative leave; (4) his purposeful obstruction of HRO's mission; and (5) the Board ***following the explicit advice of its counsel***. (*See* Doc. # 107, PageID # 2963-66; 2976-79).

[4] The Sixth Circuit applies the same burden-shifting analysis and test for FCA retaliation claims as it does for discrimination claims under Title VII. *See Jones-McNamara v. Holzer Health Sys.*, 630 Fed. Appx. 394, 398 (6th Cir. 2015) (holding that the test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)—a Title VII case—is controlling for FCA retaliation claims).

Presented with such facts, Plaintiff has the insurmountable burden of proving that each and every one of these reasons were ***both*** false ***and*** were not the real reasons for his termination to avoid dismissal of his FCA retaliation claim. *See Harris v. Metro. Gov't of Nashville and Davidson County*, 594 F.3d 476, 486 (6th Cir. 2010) ("A defendant's proffered reason **cannot be proved to be a pretext** 'unless it is shown *both* that the reason was false, *and* that discrimination [or retaliation] was the real reason.") (emphasis added) (quoting *St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502, 515 (1993)). Stated differently, Plaintiff would need to show Defendants "**made up [their] stated reasons** to conceal intentional [retaliation]." *White v. FCA US LLC*, 2026 U.S. Dist. LEXIS 53953, at *26-27 (E.D. Mich. Mar. 16, 2026) (quoting *Chen v. Dow Chem Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)) (emphasis added).

He cannot do so here. Indeed, Plaintiff doesn't dispute he took all the actions that ultimately led to his termination. (*See* Doc. # 107, PageID # 2977) (summarizing Plaintiff's admissions). And no reasonable jury could possibly conclude that Defendants somehow "made up" Attorney Nelson's 38-page, thorough report that recommended Plaintiff's termination. (*See* Doc. # 107-11, PageID # 3039).

Given this, consideration of Plaintiff's motion would be a waste of time and judicial resources. This Court should consider Defendants' Motion for Summary Judgment as to ***all*** the elements of Plaintiff's FCA retaliation claim *first*, as—in doing so—it is likely to render Plaintiff's motion for partial summary judgment entirely moot. *See, e.g.*, *Buggs v. FCA US, LLC*, 2023 U.S. App. LEXIS 1591 (6th Cir. 2023); *White v. FCA US LLC*, 2026 U.S. Dist. LEXIS 53953, at *26-27 (E.D. Mich. Mar. 16, 2026).

**2. Plaintiff Has Failed to Set Forth a *Prima Facie* FCA Retaliation Claim.**

To the extent this Court wades into the first element of Plaintiff's FCA retaliation claim, it should do so in tandem with Defendants' motion for summary judgment, which already sets forth, at length, the multiple reasons as to why Plaintiff has failed to establish a *prima facie* case. (*See* Doc. # 107, PageID # 2969-79). Defendants incorporate such arguments as if fully rewritten herein.

Fortuitously, Plaintiff's motion for partial summary judgment makes this Court's decision even easier. It confirms: (1) Plaintiff lacked a subjective, good-faith belief that an FCA/AKS violation was occurring; (2) Plaintiff lacked an objective, reasonable belief that an FCA/AKS violation was occurring; and (3) the only "evidence" that Plaintiff has of retaliation is a misreading of his termination letter combined with baseless speculation. (Doc. # 101, PageID # 1480-1502). Plaintiff's FCA retaliation claim fails at every step.

**i. Plaintiff Has Failed to Establish He Had a Subjective, Good-Faith Belief That an AKS Violation Was Occurring at the Time of His Letter to the ODH.[5]**

As to Plaintiff's subjective belief, his admissions on summary judgment confirm he did not have a subjective belief that **any AKS violations were occurring as of September 3, 2024**, which is fatal to his claim. Plaintiff acknowledges that the only "belief" he had at the time of his alleged "protected activity" was that he *believed* Ms. Reese had a conflict of interest—and that's it. (*See* Doc. # 101, PageID # 1497 and Doc. # 101-1, PageID # 1496, ¶ 41). That much is obvious. It is also beside the point. Plaintiff fundamentally misunderstands what he is required to prove to establish a *prima facie* FCA retaliation claim based on alleged violations of the AKS.

[5] The elements of an FCA retaliation claim—and the requirements of each element—are set forth in Defendants' motions for summary judgment and, for brevity, are not restated here. (*See* Doc. # 107, PageID # 1968-69).

Here, Plaintiff must do more than simply state he believed there was a "conflict of interest." Rather, he is required to show he had a good-faith, subjective belief **AKS violations** were occurring at the time of his alleged "protected activity," because his FCA retaliation claim **is entirely predicated on alleged violations of the AKS**. (*See* Doc. # 59, Am. Compl., ¶¶ 173-182) (citing only to the AKS as the basis for his FCA retaliation claim). This is significant, as the federal anti-kickback statute **does not criminalize having a perceived "conflict of interest."** *See generally* 42 U.S.C. § 1320a-7b(b)(2). It criminalizes having an actual *quid pro quo* relationship for goods or services paid by federal funds, which would be federal fraud. *Miller v. Abbot Labs.*, 648 F. App'x 555, 561 (6th Cir. 2016) (quoting 42 U.S.C. § 1320a-7b(b)(2)). And while Plaintiff does not have to prove an actual AKS violation occurred in hindsight, he must nonetheless prove he had a subjective *and* objective reasonable belief that an AKS violation ***was occurring*** at the time of his report. *See Jones-McNamara v. Holzer Health Sys.*, 630 F. App'x 394, 400 (6th Cir. 2015) (holding that an FCA retaliation claim predicated on an AKS violation required Plaintiff to "reasonably [believe] that [defendant] **accepted illegal kickbacks or bribes under the AKS**") (emphasis added). Plaintiff ignores this controlling law entirely in his analysis. (*See* Doc # 101-1, PageID # 1494-95).

Plaintiff's own declaration confirms that Plaintiff cannot satisfy even the *subjective* belief requirement. Plaintiff again concedes that he did not actually believe Ms. Reese's ordering was influenced—in any way—by her outside employment. (Doc. # 101-2, PageID # 1521, ¶ 41) ("**I did not know at the time whether Reese's outside relationship had influenced HRO's naloxone ordering,** and I did not claim in the disclosure notice that it had.") (emphasis added). This is consistent with his letter to the ODH, in which he confirmed that he had "no reason to believe that AmandaLynn's outside contract influenced her ordering decisions." (Cauchon I Dep.

at 196:21-197:21 and Ex. 18, at 2). And this is consistent with his deposition testimony that he didn't even look. (*Id.* at 253:2-256:12).

Put simply, Plaintiff believing Ms. Reese had a potential "conflict of interest" is not sufficient to establish that Plaintiff had a subjective, good faith belief that federal fraud – in the form of an AKS violation – was occurring at the time of his report to the ODH. *Jones-McNamara*, 630 Fed. Appx. at 400. As Plaintiff concedes he had no such belief, Plaintiff's motion must be denied and Defendants granted summary judgment as to Plaintiff's FCA claim in its entirety.

**ii. Plaintiff Has Failed to Establish He Had an Objective, Reasonable Belief That an AKS Violation Was Occurring at the Time of His Letter to the ODH.**

Plaintiff falls even further short in establishing that he had an objective, reasonable belief that an AKS violation was occurring. In fact, Plaintiff fails entirely to point to any evidence—at all—in his possession at the time of his disclosure to the ODH that could possibly support such belief. (*See* Doc. # 101, PageID # 1497) (vaguely asserting that Plaintiff "sought information," and "distinguished confirmed facts," whatever that means).

This is not surprising, as Plaintiff admitted in his deposition that the only two pieces of information he had were: (1) Ms. Reese's job title at Velocity BioGroup, taken from the internet; and (2) Ms. Reese's job title and position at HRO. (Cauchon I Dep. at 208:10-14); (*see also id.* at 60:18-63:7).

Plaintiff spends the bulk of his time pointing to "evidence" that is entirely irrelevant to this inquiry, including his hearsay conversations with ODH's Project Dawn administrator; the depositions of HRO, Mr. Steward, and Ms. Reese, and even the report of Attorney Maritza Nelson, which was obviously not in his possession at the time of his letter to the ODH. (*See generally* Doc. # 101-1, PageID # 1497). Again, *none* of this evidence supports a reasonable belief that an

AKS violation was occurring. But, even so, all of this "after-the-fact" evidence is not properly considered. Sixth Circuit law is clear that Plaintiff cannot point to evidence that he discovered after the fact and/or during the course of this litigation to justify an alleged "reasonable belief" in hindsight. *Jones-McNamara*, 630 F. App'x at 401 (holding that the subjective and objective tests are determined by "the facts in [plaintiff's]' knowledge **at the time [he] reported AKS violations**") (emphasis added).

#### iii. Allegations of State Fraud Are Insufficient as a Matter of Law to Constitute "Protected Activity" Under the FCA.

Plaintiff's motion further confirms that this lawsuit does not involve claims submitted to the federal government, which is required for an FCA retaliation claim. Plaintiff's argument appears to be that the State of Ohio received federal funds through a grant which Plaintiff asserts were ultimately used, at least in part, to pay for HRO's contract. (*See generally*, Dog. # 101-1, PageID # 1493).

But nothing presented to this Court supports any belief that a claim was made by HRO to any federal agency. Quite to the contrary, the "Interagency Agreement" Plaintiff points to is between **two Ohio entities**, not the federal government. (*See* Doc. # 101-45, PageID # 1776-85). And the "invoices" he identifies from HRO as purported "claims for reimbursement" are to **Ohio state agencies**, not the federal government. (*See, e.g.*, Doc # 101-44). Federal law is clear that where, as here, the alleged "whistleblowing" does not concern actual ***claims*** for reimbursement to ***the federal government***, such lawsuit is properly dismissed. *Fakorede v. Mid-South Heart Ctr., P.C.*, 709 F. App'x 787, 790 (6th Cir. 2017) (affirming dismissal of FCA retaliation claim where plaintiff's allegations of purported fraud against a state hospital – and alleged violations of AKS – did not constitute "protected activity" under the FCA); *Accord Steele v. Great Basic Sci, Inc.*, *Steele v. Great Basin Sci., Inc.*, No. 2:16-cv-00628, 2016 U.S. Dist. LEXIS 161818, at *15 (Dist. Utah

Nov. 21, 2016) (dismissing FCA retaliation claim where plaintiff did not allege that defendant had "submit[ted] or directly induce[d] claims for payment from the Government," noting that the "Act's focus remains on those who present or **directly induce** the submission of false or fraudulent **claims**") (emphasis added, citation omitted); *Accord Jones-McNamar v. Holzer Health Sys.*, 630 Fed. Appx. 394, 400 (6th Cir. 2015); *Miller v. Abbott Labs.*, 648 Fed. App. 555, 561 (6th Cir. 2016) (both confirming an alleged FCA violation predicated on the AKS must involve **actual claims** submitted to the federal government).

**3. Plaintiff Has Failed to Establish That the Board Was Aware of Any Actual Protected Activity.**

As to the knowledge element of Plaintiff's FCA claim, while there is no dispute that the Board was aware of Plaintiff's September 3, 2024, letter to the ODH, Defendants' position is simply that this was not a "protected activity" to begin with. *See supra*, Section II(A). Plaintiff's threatening letters to HRO on dates *after* the letter was sent and the Board's internal text messages are simply irrelevant and do not change the nature of whether or not his original report to the ODH was a "protected activity."

**4. Plaintiff Has Failed to Establish That He Was Terminated As a Result of Any Alleged Protected Activity.**

Plaintiff's primary argument as to causation is that his termination letter references the ODH letter and—therefore— "causation" is somehow proven. Not so.

*First,* Plaintiff's termination letter makes clear that it was this insubordination that led to his termination. As set forth in the letter, the bases for his termination were: (1) ignoring the advice of HRO's counsel; (2) ignoring his prior agreement with the Board that HRO would procure legal advice *before* acting; (3) putting HRO at risk of violating equal pay laws; and (4) his

insubordination throughout the entire investigative process and while he was on administrative leave. (Cauchon II Dep., Ex. 31).

*Second*, Plaintiff has failed to meet his burden to prove "but for" causation. *See United States ex rel. Manieri v. Avanir Pharms, Inc.*, No. 5:15-cv-0611, 2021 U.S. Dist. LEXIS 42888, at *15 (N.D. Ohio Mar. 8, 2021).[6] It is beyond dispute that Plaintiff: (1) refused to participate in an independent investigation of hostile work environment and discrimination complaints against him; (2) refused to comply with his administrative leave; (3) attempted to block HRO from accessing its financial accounts; (4) changed the locks in HRO's office; and (5) was repeatedly insubordinate to the Board. (*See* Doc. # 107, PageID # 2976-79) (detailing Plaintiff's insubordination). Plaintiff simply cannot meet his burden to prove "but for" causation where, as here, there were multiple reasons, each of which independently justified the Board's unanimous decision.

*Third*, Plaintiff's speculation that he was placed on administrative leave initially because of his letter to the ODH is pure fiction. The record is beyond dispute that on September 5, 2024, the Board of HRO received multiple complaints (by Ms. Reese and at least two other employees) of hostile work environment and/or discrimination against Plaintiff. (Cauchon I Dep. at 231:8-233:4 and Exs. 23-24; Steward Dep., at 38:16-44:4; Turner-Bicknell Decl., Ex. A-1). Upon receiving these complaints, the Board properly initiated an investigation pursuant to HRO's policies. (*See* HRO Handbook, at 6, HRO_000344) (requiring that an investigation be initiated within five (5) business days). Accordingly, there is simply no support for Plaintiff's speculation that he was placed on paid administrative leave because of his letter to the ODH.

---

[6] Although the Sixth Circuit has not directly ruled on the issue, the majority of U.S. Circuits agree that but-for causation applies to the third element of an FCA retaliation claims. *See Mooney v. Fife*, 118 F.4th 1081, 1090 (9th Cir. 2024); *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 79 F.4th 1262, 1277 (10th Cir. 2023*); Nesbitt v. Candler Cnty.*, 945 F.3d 1355, 1359-60 (11th Cir. 2020), *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 76-78 (3d Cir. 2018); *United States ex rel. King v. Solvay Pharms., Inc.*, 871 F.3d 318, 333 (5th Cir. 2017) (per curiam); *United States ex rel. Cody v. ManTech Int'l, Corp.*, 746 F. App'x 166, 176-77 (4th Cir. 2018); *Morgan-Lee v. Therapy Res. Mgmt., LLC*, 129 F.4th 93, 98 (1st Cir. 2025).

*Finally*, Plaintiff's suggestion that Defendants placed him on administrative leave to "punish him," *see* Doc. 101-1, PageID # 1501, is based on a gross misreading of the Board's text message thread produced in this lawsuit. Board member Tasha Turner-Bicknell clearly states in that thread that she believed Dennis Cauchon **was punishing AmandaLynn Reese** for getting the board involved. (*See* Doc. # 101-32; PageID # 1692). Both Mr. Steward and Mr. Golden agreed with Ms. Turner-Bicknell's assessment that Plaintiff was **punishing** Ms. Reese. *Id.* ("I agree he's being petty" (Mr. Steward)) ("I agree as well"/ punishment (Mr. Golden)). If there was any confusion as to what Mr. Golden meant, Plaintiff had the opportunity **and declined to depose him**. His speculation that the Board wanted to "punish" him has no basis in fact.

For these reasons—and the additional reasons set forth in Defendants' motion for summary judgment—Plaintiff's FCA claim fails as a matter of law and must be dismissed.

### B. Plaintiff's Declaratory Judgment Claims Fail as a Matter of Law.

Plaintiff's request for "declaratory judgment" on the issue of whether he is still the President and a purported board member of HRO is meritless and—in the end—pointless. Effectively, Plaintiff asks this Court to go back in time and: (1) permit him to vote on his own termination; and (2) force HRO to hold a board meeting with two (2) additional days' notice so that Plaintiff can appear—***for a second time***—and object to his removal as an alleged board member. (*See* 2d Am. Compl. ¶ 185). It is beyond dispute that—*even if* Plaintiff was permitted to vote on board issues in which he clearly had a conflict of interest—he had no ability to stop the **unanimous decision to fire him** by all seven (7) board members. (*See* Cauchon I Dep., Ex. 31). Thus, there is simply no point to Plaintiff's declaratory judgment claim other than to continue to harass HRO's current and former board members.

Regardless, Plaintiff's request that this Court adopt a "strict compliance" rule—without citing to a single case that adopts this standard—is baseless. Ohio courts apply a "substantial compliance" standard when it comes to the internal affairs of a non-profit organization and HRO easily met this standard on all counts. Defendants incorporate their motion for summary judgment as to Plaintiff's declaratory judgment claim, (Doc. # 107, PageID # 2980-86), as if fully rewritten herein, and further address Plaintiff's arguments below.

**1. Plaintiff Concedes That There is No Case and Controversy Regarding Board Meetings That Do Not Address his Administrative Leave, Termination, or Removal as an Alleged Board Member.**

At the outset, it is important to define what ***is*** and ***is not*** at issue. Plaintiff concedes that declaratory judgment is only sought with respect to "three discrete past actions," by the Board. (Doc. # 101-1, PageID # 1470). Defendants agree the actual dispute is properly limited to: (1) Plaintiff being placed on administrative leave; (2) Plaintiff being removed as an alleged board member; and (3) Plaintiff being terminated, which are the only three "controversies" alleged in the Complaint. (*See* Doc. # 59, PageID # 1128, ¶ 184). Thus, Plaintiff's request for "declaratory judgment" as to the validity of any board meeting that *does not* address these three discrete actions must be denied as a matter of law as there is no justiciable case or controversy. *City of Parma v. Cingular Wireless, LLC*, 278 F. App'x 636, 641 (6th Cir. 2008) (holding a justiciable controversy is a requirement for summary judgment).

**2. Plaintiff Was Removed as an Alleged "Director" on October 27, 2024, Mooting All Other Issues.**

With these limited set of issues defined, Plaintiff's motion is easy to dispose of. The Achilles' heel of Plaintiff's case is that he was effectively removed as an alleged "director" on October 27, 2024. (*See* Defs.' Mot. For S.J., Doc # 107, PageID # 2982-84). This resolves all issues: upon his removal, there can be no question he was *not* entitled to sign his own termination

letter—even if he was entitled to (which he was not)—and the issue of his administrative leave and the October 13, 2024, meeting are moot and do not present a case or controversy for this Court to resolve.

As to the effectiveness of the October 27, 2024, meeting, the sole issue for the Court to decide is whether the Board's twelve (12) day notice, rather than fourteen (14) days, was sufficient. The clear answer under Ohio law is ***yes***, for multiple reasons.

*First*, Plaintiff's position that "strict compliance" applies to the notice requirements of a non-profit organization is pure fiction. Plaintiff outright ignores the controlling authority under Ohio law, in which courts have repeatedly held that the "substantial compliance" standard applies when determining an organization's compliance with its own organizational documents. *See, e.g., Robb v. Chagrin Lagoon Yacht Club*, 75 Ohio St.3d 264, 268 (1996) (holding that the "substantial compliance" standard applies where the case concerns private governance documents and not due process rights afforded under the U.S. Constitution); *Resnick v. Camp Tuscazoar Found.*, 1997 Ohio App. LEXIS 3973, at *4 (Ohio Ct. App. 1997) (applying "substantial compliance" standard to the validity of a non-profit's removal of one of its members); *accord State ex rel. Jones v. Bd. of Educ. Of the Dayton Pub. Schs.*, 2018-Ohio-676 (Ohio Ct. App. 2018); *Stuble v. Board of Education of the Cuyahoga Valley Joint Vocational Sch. Dist.*, 1982 Ohio App. LEXIS 13318 (Ohio Ct. App. 2006); *Cherry Lane Dev., LLC v. Walnut*, 2012-Ohio-3559 (Ohio Ct. App. 2012). Plaintiff does not even cite—let alone address—this authority. (*See* Doc. # 101-1, PageID # 1470-80).

*Second*, there is simply no dispute that the Board had the power to remove Plaintiff as an alleged "director" and that he had a full and fair opportunity to be heard. Specifically, Plaintiff does not dispute: (1) the Board ***had the power to vote him off*** as a director under HRO's ByLaws;

(2) he ***requested*** that meeting; (3) he received ***actual notice*** of the meeting; (4) he ***appeared*** at the meeting; (5) he was given an ***opportunity to speak and voice his objections*** at the meeting; and (6) the Board members present unanimously voted him off the Board. (Cauchon II Dep., at 20:25-23:21); (Steward Dep., Doc. # 103-2, Ex. 6) (confirming notice and link sent on Oct. 15, 2024); (Turner-Bicknell Decl., Doc. # 107-1 and 107-12, Ex. A-11) (board meeting minutes confirming board members' attendance and memorializing Plaintiff's statements).

*Third*, Plaintiff's position is patently inconsistent. Plaintiff argues, on the one hand, that he remained as "director" despite there being absolutely no record in any of HRO's meeting minutes of any vote held to re-elect him,[7] while, on the other hand, arguing that this Court must otherwise enforce "strict compliance" as to notice. Plaintiff cannot have it both ways.

*Fourth*, the three cases cited by Plaintiff in favor of a "strict compliance" standard do not stand for that proposition and are easily distinguishable.

*Mt. Eaton Cmty. Chuch, Inc. v. Ladrach*, 2009-Ohio-77, is entirely inapposite. The Court held that the notice of a meeting was invalid when **the time of the meeting had changed entirely**, and members effectively **had no notice at all**. *Id.* at ¶ 13 (holding that there was no compliance when Pastor Fowler **changed the time of the meeting**). Such was not the case here.

*Niehaus v. The Columbus Maennerchor*, 2008-Ohio-4067, is even more irrelevant. This case involved the sale of all, or substantially all, the corporation's assets. 2008-Ohio-4067, ¶ 46. The company did not comply with several statutory requirements—including the requirement to give a summary of the terms of the proposed transaction—which were never given. *Id.* at ¶ 52. Plaintiff fails to explain how this case is even remotely applicable to the case at bar. Regardless,

[7] As just one example, Plaintiff claims he was "reelected" at the March 9, 2024, meeting. Yet the minutes of that meeting conspicuously reflect that **no votes were taken on election or reelection of directors**. (*See* Doc. # 101-7, PageID # 1546-48). And HRO disputes that Plaintiff was ever reelected as a Board member. (*See* Doc. # 103-1 ("HRO Dep.") at 12:5-13:24; Doc. # 103-2 ("Steward Dep.") at 16:7-19:3).

it does not speak to the issue of substantial compliance with notice of a board meeting to remove a director under Ohio law. *See id.*

*American Hungarian Federation v. Nades*, 35 Ohio App.3d 72 (Ohio Ct. App. 1987), like the cases above, does not address the issue of substantial compliance. The Court merely held that notice was invalid where 1/3 of the members did not receive any type of notice at all. *Id.* at 75.

Accordingly, Plaintiff's position—which ignores entirely controlling Ohio law—must be rejected. Plaintiff was properly removed as an alleged board member on October 27, 2024, mooting all other issues.

**3. Alternatively, Plaintiff's Request for Declaratory Judgment Must Be Denied as There is an Obvious Issue of Fact as To Whether Plaintiff Was Even a Director as of September 2024.**

Alternatively, to the extent Plaintiff's claims are not outright dismissed, this Court need not wade into the morass of purported evidence that Plaintiff claims shows that he was somehow a "director" as of September 2024. There is a clear issue of fact precluding summary judgment in Plaintiff's favor on the issue.

On the one hand, Plaintiff claims that he was a director despite no record evidence in HRO's official records showing that he was ever re-elected after he became President. On the other hand, the rest of HRO's Board recalls that he **was not** a director as of September 2024. (*See, e.g.*, HRO Dep. at 12:5-13:24; Steward Dep. at 16:7-19:3). Indeed, Plaintiff himself admits he only began asserting he was a "director" in emails in September 2024, when he began demanding all information on the investigation(s) against him while those investigations remained pending. (Cauchon I Dep. at 269:14–270:17). And the Board only voted to remove him as an alleged "director" on October 27, 2024, at the advice of counsel, out of an abundance of caution. (Steward Dep. at 71:13-15). Summary judgment is obviously inappropriate on this disputed issue.

That issue of fact, however, **is only a problem for Plaintiff** and does not preclude summary judgment in Defendants' favor. Plaintiff is required to prove he was a director as of September 2024, in order to prevail on each and every one of his declaratory judgment claims. Specifically, Plaintiff's claims are based on his contentions that: (1) his "administrative leave" wasn't effective because ***he*** was a director and did not receive notice of the board meeting authorizing it; (2) his removal as a "director" wasn't effective because ***he*** was a director who didn't waive 14 days' notice; and (3) his termination as president wasn't effective because ***he*** wasn't at a board meeting to vote on his own termination and/or didn't sign his own termination letter. (*See generally* Doc. # 101).

To the contrary, Defendants' motion for summary judgment **does not** require the Court to make a determination as to whether Plaintiff was a director. Defendants moved for summary judgment on the basis that: (1) Plaintiff's claim as to the validity of his administrative leave fails due to a lack of a controversy (as he is no longer on administrative leave); (2) his claim as to the validity of his removal as an alleged board member fails as HRO substantially complied with its By Laws; (3) his claim as to the validity of his termination fails because the Board's unanimous action in writing was effective and Plaintiff wasn't entitled to sign his own termination letter; and (4) his claim for declaratory judgment as to "retaliation" is duplicative and subsumed by his FCA and state law claims. (*See* Defs.' Mot. For S.J., Doc. # 107, PageID # 2980-86). None of these legal issues are contingent upon Plaintiff's status as a director.

As such, Plaintiff's motion for summary judgment as to his declaratory judgment claims is properly denied on its face.

### C. Plaintiff's Alternative for "Factual Findings" is Improper and Must Be Rejected as Fed. R. Civ. Proc. 56 Is Not a Mechanism for Such Relief On "Facts" That Are Substantially Controverted by the Parties.

This Court can easily deny Plaintiff's alternative request that this Court issue certain factual "findings" in lieu of a decision on any of Plaintiff's claims. (*See* Doc. # 101-1, PageID # 1505). It is well settled that Rule 56(g) is simply not a procedural mechanism for this Court to make discrete "factual findings," that are—in effect—simply a regurgitated request for judgment on the central issues of the case *or* are simply immaterial to the case.

Whether to undertake a Rule 56(g) analysis lies within this Court's sound discretion. *Detreville v. Gurevich*, No. 21-cv-00638, 2026 U.S. Dist. LEXIS 52959, at 34 (D. Colo. Mar. 13, 2026). Rule 56(g) is only utilized where a ruling would "materially expedite the adjudicative process" or would "limit the scope of the trial by removing sham issues from the case." *Russell v. Pallito*, 2019 U.S. Dist. LEXIS 83704, 2019 WL 2125101, at *19 (D. Vt. Jan. 7, 2019) (quoting *Hartford Fire Ins. Co. v. Goodman Mfg. Co.*, L.P., 2010 U.S. Dist. LEXIS 80110, 2010 WL 3260111, at *2 (S.D.N.Y. Aug. 4, 2010)). A request is properly denied where the "facts" are inextricably intertwined with matters in controversy and/or accepting the facts as "established" would not aid the jury or save time at trial. *See, e.g.*, *Forge v. Sisters of Charity of Leavenworth*, 2019 U.S. Dist. LEXIS 197652, 2019 WL 6037352, at *1 (D. Kan. Nov. 14, 2019) (declining to issue a Rule 56(g) order because "particular facts identified by defendant are not material to the jury's resolution of plaintiff's claims or are inextricably intertwined with matters that are substantially controverted by the parties") (footnotes omitted); *Molbogot v. MarineMax E., Inc.*, 2022 U.S. Dist. LEXIS 128048, 2022 WL 2817873, at *2 (S.D. Fla. July 19, 2022) (declining to establish facts as a matter of law where they would not "necessarily aid the jury or save time at trial given the logistical problems that it would cause").

*First*, Plaintiff's request should be denied on its face as Plaintiff fails to even set forth what exactly he is asking the Court to determine. Rather, his laundry list of "facts," are either sentence fragments or paraphrased legal issues. (*See, e.g.*, Doc. # 101-1, PageID # 1505) ("Cauchon's written and on-the-record non-waiver"; "Cauchon's status as a director on each relevant date" (without specifying what dates he's referring to); "Defendants' verified notice dates" (without specifying what those are)).

*Second*, there is no question that Plaintiff's laundry list of alleged "undisputed facts" are, in fact, disputed and are inextricably intertwined with matters that are controverted by the parties. As just a few examples, the *legal* question of Plaintiff's "status as a director," the *legal* effect of the November 4, 2024, termination letter, the *legal* issue of whether two weeks' notice was required for any particular board meeting, and the *legal* validity of the October 27, 2024, vote to remove him as an alleged board member are all obviously at issue and intertwined with his claims. Accordingly, any request under Rule 56(g) is properly denied.

## III. CONCLUSION

Plaintiff's motion only further confirms that his FCA retaliation and declaratory judgment claims lack merit. Accordingly, Defendants request that Plaintiff's motion be DENIED, and their cross-motion for summary judgment GRANTED, at the earliest opportunity.

Respectfully submitted,

*/s/ Steven A. Chang*
Steven A. Chang, Esq. (Trial Attorney) (0088321)
Melvin J. Davis, Esq. (0079224)
Mrinali Sethi, Esq. (0101295)
Reminger Co., L.P.A.
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
(614) 228-1311; FAX: (614) 232-2410
mdavis@reminger.com
schang@reminger.com
msethi@reminger.com

*Counsel for Defendants Dwayne Steward, Raina (William) Golden and Tasha Turner-Bicknell*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that said filing will be served via the Court's CM/ECF system upon Plaintiff, *pro se*, and all counsel of record.

*/s/ Steven A. Chang*
Steven A. Chang (0088321)