**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DENNIS CAUCHON, *et al.*** | ) | |
| | ) | **JUDGE Edmund A. Sargus** |
| Plaintiffs, | ) | |
| | ) | **CASE NO. 2:25-cv-00075** |
| v. | ) | |
| | ) | |
| **DWAYNE STEWARD, *et al.*** | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT/COUNTERCLAIM PLAINTIFF HARM REDUCTION OHIO'S OPPOSITION TO PLAINTIFF/COUNTERCLAIM DEFENDANT DENNIS CAUCHON'S MOTION FOR SUMMARY JUDGMENT AS TO COUNTERCLAIMS**

The Court should deny Counterclaim Defendant Dennis Cauchon's summary judgment motion on his counterclaims ("Motion," ECF No. 105, PageID 2697) because he admits to engaging in the conduct that amounts to tortious activity following the termination of his employment from Harm Reduction Ohio ("HRO").

Contrary to Plaintiff's assertions, HRO's Board of Directors ("Board") properly terminated his employment unanimously in writing due to his insubordinate behavior that threatened the organization. Such action was effective under Ohio law and was not void *ab initio*.

Instead of peaceably separating from HRO, he tortiously interfered and even converted certain of the organization's accounts, funds, and property. He also engaged in a campaign of false and defamatory statements in an attempt to tarnish the goodwill and reputation of the organization. Such statements were defamatory per se meaning malice and damages are presumed. Moreover, HRO has shown it was damaged as a result of his tortious conduct. Given the fact record and applicable law, summary judgment is not proper on HRO's counterclaims.

## I. STATEMENT OF FACTS

### A. HRO Effectively Terminated Plaintiff's Employment as President.

After months of Cauchon's insubordinate conduct and refusal to cooperate, HRO's Board terminated his employment through a unanimous action in writing on November 4, 2024. (Steward Dep., July 31, 2026, 73:12-14, ECF No. 103-2 at PageID 2623.) All of the then-current members of the Board signed the termination letter.

Contrary to his assertions, Cauchon was not a Board member at that time. Both HRO's then-Board chair Dwayne Steward and its corporate representative testified that he was not. (Steward Dep. 16:7-10, ECF No. 103-2 at PageID 2609; HRO Dep. 12:14-21, July 30, 2026, ECF No. 103-1 at PageID 2502.) Even Cauchon himself admitted that HRO did not regularly re-elect Board members in accordance with its bylaws. (Cauchon Dep., Vol. II, 27:4-17, July 30, 2026, ECF No. 102-2 at PageID 1910.)

Because Cauchon believed he was a Board member, however, the Board agreed to have a meeting at Cauchon's request before his employment was terminated. (Steward Dep. 71:13-15, ECF No. 103-2, PageID 2623.) On October 27, the Board met via Zoom and afforded Mr. Cauchon the opportunity to be heard. (Id. at 71:24 – 72:8, ECF No. 103-2 at PageID 2623.) Out of an abundance of caution and based on the advice of counsel, the Board voted to remove Mr. Cauchon from the Board. (Id. at 75:2-13, ECF No. 103-2 at PageID 2624.)

### B. Cauchon Improperly Exercised Control Over HRO Bank Accounts, Website, Leased Property, and its Facebook Page.

After his employment was terminated, Cauchon improperly exercised authority over HRO's accounts and property without any right or privilege to do so.

*i. Cauchon Accessed HRO's Bank Account and Converted Its Funds.*

Cauchon continued to control and use HRO's bank accounts and organizational funds without authorization. (Cauchon Dep. Vol. II, 54:1 – 68:25, ECF No. 102-2 at PageID 2214-17.) He intentionally prevented access to HRO's bank accounts with JP Morgan Chase and First Federal Bank. (Cauchon Dep., Vol. II, 57:2 – 58:4, ECF No. 102-2, PageID 2214-2215; HRO Dep. 48:9-25, ECF No. 103-1 at PageID 2514.) He instructed these banks not to allow HRO's Board and employees to access these accounts. (Cauchon Dep. Vol. II, 70:1 – 73:6, ECF No. 102-2 at PageID 2218, 2282.) He also withheld login information and passwords for HRO accounts. (Id. at 70:1 – 76:15, ECF No. 102-2 at PageID 2218-2219.) Plaintiff even went so far as to direct funds from HRO's Chase account. (Id. at 61:3-17, 93:20 – 94:13, 96:21-25, ECF No. 102-2 at PageID 2215, 2223-24.) Such unauthorized payments included, but were not limited to, at least five months of rental payments totaling $8,750 ($1,750 per month for five months) for a lease that he improperly entered after he was terminated. (Id. at 94:7-8, 96:21-25, ECF No. 102-2 at 2224.)

As a result of his misconduct, HRO had to re-claim its bank account with First Federal. (HRO Dep., 48:9-25, ECF No. 103-1 at PageID 2514.) HRO had to close its Chase account and move to another bank. (Id.) And HRO lost thousands of dollars to a rental property that it did not want and was unable to freely access, while it also paid for new office space that was free from Cauchon's interference. (HRO Dep. 44:12-15, 53:7 – 56:14, ECF No. 103-1 at PageID 2513, 2515-16.)

*ii. Cauchon Altered HRO's Website, QuickBooks Account, and To Date Has Refused to Turn Over Access to the Organization's Facebook Page.*

Cauchon also altered HRO's website. (HRO Dep. 51:6 – 53:6, ECF No. 103-1 at PageID 2515.) He continued to hold administrator access to HRO's website, which prevented the

organization from making any changes to the website itself without dealing with Cauchon directly. (Id.) He still maintains control over the domain to date. (Id.)

In a similar fashion, Cauchon refused to turn over access to the organization's QuickBooks account. (Cauchon Dep. 72:9 – 73:6, ECF No. 102-2 at PageID 2218; HRO Dep. 47:14 – 49:20, ECF No. 103-1 at PageID 2514, 2523.) Before his termination, HRO's staff members and bookkeepers had access to the organization's QuickBooks accounts. (Cauchon Dep., Vol. II, 15:5 – 16:24, ECF No. 102-2, PageID 2204; HRO Dep., 82:1 – 82:23, ECF No. 103-1, PageID 2514, 2523.) After his termination, that access was limited. (Cauchon Dep., Vol. II, 72:19 – 73:9, ECF No. 102-2, PageID 2218). HRO had to open a new QuickBooks account because Cauchon tampered with their prior account. (Cauchon Dep., Vol. II, 72:19 – 73:9, ECF No. 102-2, PageID 2218; HRO Dep., 82:16 – 82:23, ECF No. 103-1, PageID 2514, 2523.)

In addition to restricting access to their website and QuickBooks, Plaintiff continued to post on HRO's Facebook page and has refused to relinquish control of it. (HRO Dep. 88:1-4, ECF No. 103-1 at PageID 2524.)

*iii. Cauchon Entered Into A Commercial Lease After His Termination Despite Explicit Instructions to the Contrary.*

Cauchon entered a new commercial lease on behalf of HRO after his termination, despite express instruction from the Board not to do so. (Cauchon Dep. Vol. II 83:21 – 85:12, ECF No. 102-2 at PageID 2221, 2304-06.) He changed the locks to HRO's property, effectively preventing HRO from accessing their property for nearly the duration of the new lease. (HRO Dep. 23:4-10, ECF No. 103-1 at PageID 2508.) Cauchon's actions prevented the organization from accessing, among other things, over 4,000 naloxone kits, 20,000 fentanyl strips, printed materials, furniture, and the personal property of staff from November 2024 to April 2025. (*See id.* 53:7 – 65:20, at PageID 2515-16.) HRO repeatedly requested access to the property, but Cauchon refused to

relinquish control. (Cauchon Dep. Vol. II 69:23 – 73:9; 88:5-7, ECF No. 102-2 at 2217-18; 2222; 2295-2301.) HRO paid counsel and third parties to assist with the recovery of their property.

### C. Plaintiff Knowingly Made False and Defamatory Statements to HRO's Business Partners.

In addition, post-termination, Cauchon executed a calculated take-down campaign against HRO through defamatory statements made to third parties. He continued to hold himself out as President of HRO despite the termination of his employment. (Cauchon Dep. Vol. II, 68:22 – 72:8, ECF No. 102-2, PageID 2217-18.) He published to third-party business partners of HRO that it had a conflict of interest because of an employee who worked for "Kloxxado's lobbyist." (*See, e.g.*, Cauchon Dep. Vol. II, 138:3-14; 140:11-16, ECF No. 102-2,PageID 2235; and HRO Dep., ECF No. 103-1,PageID 2588 (regarding his February 11, 2025 defamatory correspondence to Next Distro). He used similar defamatory statements repeatedly trying to persuade the Ohio Department of Health ("ODH") and others to take action against HRO. (Cauchon Dep. Vol. II, 112:13 – 113:17, ECF No. 102-2, PageID 2228) (April 2, 2025 correspondence to ODH and others); 120:3 – 123:4, ECF No. 102-2, PageID 2230-31 (April 7, 2025 correspondence to ODH and others); 123:5 – 124:20, ECF No. 102-2, PageID 2231 (August 12, 2025 correspondence to ODH); 111:9 – 117:23, ECF No. 102-2 at PageID 2228-33; *see also* HRO Dep. 118:14-25, ECF No. 103-1, PageID 2532 (describing defamatory conflict-of-interest statement Cauchon made to state pharmacy board).)

Plaintiff made these statements knowing they were false or, at a minimum, with reckless disregard for their truth. He knew when he made these statements that HRO had hired independent counsel to conduct an investigation into the alleged conflict of interest and that she determined there was none. (Cauchon Dep. Vol. II, 117:15 – 119:4, ECF No. 102-2, PageID 2229-30.) He refused to participate in that investigation because he believed the investigator had a conflict of interest. (Id. at 101:17 – 102:5, ECF No. 102-2 at PageID 2225-26.) Moreover, Cauchon did not

believe and does not know of any direct financial benefit the HRO employee received from HRO's orders of Kloxxado. (Cauchon Dep. Vol. I, 196:18 – 197:23, 218:1-7, July 29, 2026, ECF No. 102-1 at PageID 1952, 1958.) He also could not find any evidence that she showed a preference for Kloxxado over other forms of naloxone. (Id. at 257:8-16, ECF No. 102-1,PageID 1967.)

### D. HRO Has Been Damaged Due to Cauchon's Misconduct.

HRO attempted to stop Cauchon's tortious conduct and defamatory statements, but he refused to cooperate even after the state court denied his request for emergency relief. To date, HRO is mitigating the damage and destruction caused by Cauchon. That damage includes expenses in the form of: (1) legal fees for counsel to advise on the recovery of HRO's converted property and responding to Cauchon's defamatory statements to third parties, (2) payments to third parties for their technical expertise regarding HRO's website and accounts, (3) dedicated staff time in an attempt to piece together HRO credentials and information that Cauchon refused to transition when he separated from HRO, (4) and unauthorized rent payments for the lease that Cauchon improperly entered. (HRO Dep. 96:13 – 107:4, ECF No. 103-1 at PageID 2526-29.)

## II. STANDARD OF REVIEW

Summary judgment can only be granted where the undisputed material facts demonstrate the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the non-moving party, and the burden is on the movant to demonstrate summary judgment is warranted. *Rutledge v. Bd. of Montgomery Cty. Comm'rs*, U.S. Dist. LEXIS 188732, at *2 (S.D. Ohio Aug. 21, 2026). However, unsupported, self-serving statements of fact and conclusions of law cannot serve as a basis for summary judgment.

## III. LAW AND ARGUMENT

The Court should deny Cauchon's Motion for three reasons. First, he has admitted to many facts sufficient to establish, or at least create a genuine issue of material fact concerning, liability for civil theft, tortious interference, and conversion. Second, Cauchon's legal argument that his tortious conduct was justified because his employment was not properly terminated is unsupported by Ohio law. And third, Cauchon made false statements about HRO's alleged conflict of interest that are defamatory per se meaning malice and damages are presumed.

### A. Cauchon Unlawfully Accessed HRO's Accounts, Engaged in Civil Theft, Converted the Organization's Property, and Tortiously Interfered with HRO's Contractual and Business Relationships.

The Court should not grant Cauchon's Motion because his admissions create more than an issue of fact concerning his liability on HRO's counterclaims.

#### *i. Plaintiff Intentionally Accessed HRO Accounts in Violation of State and Federal Law.*

Following his termination, Cauchon admittedly accessed and used HRO banking accounts, website, and Facebook page, without authorization in violation of the Computer Fraud and Abuse Act ("CFAA"). To prove a violation of CFAA, a plaintiff must show "(1) [d]efendant intentionally accessed a computer; (2) the access was unauthorized or exceeded [d]efendant's authorized access; (3) through that access, [d]efendant thereby obtained information from a protected computer; and (4) the conduct caused loss to one or more persons during any one-year period aggregating at least $5,000 in value." *Royal Truck & Trailer Sales & Serv. v. Kraft*, 974 F.3d 756, 759 (6th Cir. 2020). Such claims encompass circumstances where the defendant's access "was unauthorized or exceeded [d]efendant's authorized access." *Royal Truck & Trailer Sales & Serv.,* 974 F.3d at 759; 18 U.S.C. § 1030(a)(2). Accordingly, liability will be imposed where a defendant accesses a computer without sanction or permission. *Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*,

648 F.3d 295, 304 (6th Cir. 2011); *see also United States v. Steele*, 595 Fed.Appx. 208, 211 (4th Cir. 2014) (finding defendant's resignation "logically suggests that the authorization he enjoyed during his employment no longer existed"). Likewise, under Ohio law, a defendant is liable under Ohio Revised Code § 2913.04 if he uses or accesses a computer system or network without the owner's consent. *See* Ohio Revised Code § 2913.04(A), (B). Here, Cauchon did just that.

Cauchon repeatedly accessed HRO's website, banking accounts, QuickBooks, and Facebook accounts without authorization. He restricted access to HRO's bank accounts with Chase and First Federal. (Cauchon Dep. 55:4-10, 57:19 – 58:4 Vol. II, ECF No. 102-2 at PageID 2214-2215; HRO Dep., 44:12-15, 53:7 – 56:14, ECF No. 103-1, PageID 2513, 2515-2516.) Cauchon accessed these accounts and made transactions for months, spending thousands of dollars, without authorization. (Cauchon Dep. Vol. II, ECF No. 102-2, PageID 2216.) He further contacted these institutions and instructed them to block access to anyone other than him. He similarly interfered with HRO's website. (HRO Dep. 51:6 – 53:6, ECF No. 103-1 at PageID 2515.) He also continues to hold access to HRO's website domain and Facebook page and has refused to turn over control to the organization to this day. (HRO Dep. 51:18 – 53:6, 88:1-4, ECF No. 103-1 at PageID 2515, 2524.) Plaintiff readily admits to each of these improper actions. (Cauchon Dep. Vol. II, 15:9 – 16:13, 70: 20 – 71:19, ECF No. 102-2 at PageID 2204, 2218.)

As a result, the Court should deny summary judgment because as the record demonstrates, and Plaintiff acknowledges, he engaged in actions constituting violations of the CFAA and Ohio Revised Code § 2913.04. *Yoder & Frey Auctioneers v. Equipmentfacts, LLC*, No. 3:10 CV 1590, 2013 U.S. Dist. LEXIS 50345, at *10 (N.D. Ohio, 2013) (holding CFAA claim survived summary judgment where the non-moving party "pointed to some evidence that [defendant] logged into its

bidding computers under false pretenses, that it bid without intending to pay, and that [plaintiff] endured some measure of loss that exceeds the threshold.")

*ii. Cauchon Tortiously Interfered With HRO's Business.*

Cauchon has admitted to engaging in conduct after the termination of his employment that amounts to tortious interference. Under Ohio law, "[t]ortious interference with a contract occurs when a person, without privilege to do so, induces or otherwise purposely causes a third person not to perform a contract with another." *Gentile v. Turkoly*, 2017-Ohio-1018, ¶ 23 (7th Dist.). Similarly, "[tortious] interference with a business relationship occurs when a person, without privilege to do so, induces or otherwise purposefully causes a third person not to enter into or continue a business relationship with another." *Id*. at ¶ 24.

Cauchon admits he purposefully and tortiously interfered with HRO's business and contracts. He admits to entering into a new lease despite instructions not to do so. (Cauchon Dep. Vol. II 83:21 – 85:12, ECF No. 102-2 at PageID 2221, 2304-06.) He admits interfering with and preventing HRO's access to its bank accounts, preventing HRO from conducting business with its banks and with services requiring the expenditure of its funds. (Id., 70:1 – 73:6, ECF No. 102-2 at PageID 2218, 2282.) He also admits that he repeatedly contacted HRO's business partners such as ODH to persuade them to take action against HRO. (Id., 111:9 – 117:23; 120:3 – 124:20; ECF No. 102-2, PageID 2228-33.) As a result, HRO was damaged in that it had to hire counsel and pay legal fees, as well as invest staff time and resources, to respond to such interference. (HRO Dep. 96:13 – 107:4, ECF No. 103-1, PageID 2526-28.)

Based on these facts, the Court should not grant summary judgment on HRO's tortious interference counterclaim. *See, e.g., Petrovski v. Fed. Express Corp.*, 240 F. Supp. 2d 685, 691

(N.D. Ohio, 2003) (denying summary judgment where a question of fact existed concerning the tortfeasor's intent).

*iii. Plaintiff Converted HRO's Property.*

Cauchon acknowledges he converted HRO's property. Courts assess conversion claims by reviewing "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by wrongful act or disposition of plaintiff's property rights; and (3) damages." *Dice v. White Family Cos.*, 2007-Ohio-5755, ¶ 17 (2nd Dist.). A party is liable for conversion "even if he is acting under a misapprehension or mistake." *Vienna Beauty Prods. Co. v. Cook*, 2015-Ohio-5017, ¶ 12 (2nd Dist.). Good faith cannot be used as a defense against a conversion claim either. *Dice v. White Family Cos*., 2007-Ohio-5755, ¶ 28 (2nd Dist.).

Cauchon held HRO's personal property hostage for months – from November 4, 2024, when his employment was terminated until April 2025, when he finally permitted HRO to retrieve its property. During that time, he unreasonably controlled and restricted HRO's access to that property by changing the locks and refusing to permit the removal of such property. He also refused to leave the real property that he improperly leased and that he insisted remain where HRO conducted business. HRO paid third parties and invested staff time and expense to retrieve its converted property from Cauchon's control. (HRO Dep. 96:13 – 107:4, ECF No. 103-1, PageID 2526-28.)

After he relinquished the personal property from the office, he refused to return the credentials for all of HRO's electronic accounts. Despite HRO's pre-suit demand for the return of such information, he refused to do so until the parties were engaged in litigation and discovery. Even during the litigation, he refused to turn over certain account information like HRO's Facebook page and continued to improperly use or access such accounts. His contention that he is

not required to return the website domain and Facebook page because he purchased or created them and used them for HRO for years when he was president does nothing more than create an issue of fact concerning the first two elements of HRO's conversion counterclaim. *See Blue Water Bin Mgmt. v. Advanced Auto & Towing Serv.*, 2015-Ohio-1155, ¶ 17 (8th Dist.).

**B. The Doctrine of Void *Ab Initio* Does NOT Justify Plaintiff's Tortious Conduct.**

Cauchon's Motion depends on the inapplicable void *ab initio* doctrine. Cauchon has failed to identify any binding or even persuasive authority that the doctrine should be applied in this case. Instead, he relies on a non-binding state trial court decision: *Mt. Pilgrim Baptist Church, Inc. v. Bishop*, Lucas C.P. No. CI 11-5815, 2014 Ohio Misc. LEXIS 23919, at *335-36 (September 3, 2014). In *Mt. Pilgrim*, the court held a board's purported incorporation under Ohio Rev. Code 1702.08 was void *ab initio* because the board's constitution required a vote by a majority of members to incorporate, and *NO* vote to incorporate was ever taken. *Mt. Pilgrim* is dissimilar to this case in which the disinterested Board members all signed the November 4, 2024 letter terminating Cauchon's employment.

More importantly, the *Mt. Pilgrim* case has no effect on binding precedent from the Supreme Court of Ohio requiring substantial compliance – not strict compliance – with a board's constitution and bylaws. *Robb v. Chagrin Lagoons Yacht Club*, 75 Ohio St. 3d 264, 268 (1996).[1] In *Robb*, a group of expelled yacht club members challenged their removal on the basis that they were given only seven days' notice of the meeting, when the club's constitution required ten. The expelled members received the notice but chose not to attend. The supreme court upheld summary

[1] HRO's summary judgment motion explains the law and facts demonstrating how the Board substantially complied with its bylaws such that summary judgment on Cauchon's declaratory judgment claim should be granted in favor of HRO. For similar reasons, which HRO incorporates as if more fully set forth herein, Cauchon's Motion on HRO's counterclaim should be denied. (*See* HRO MSJ, ECF No. 107, PageID 2982-2984.)

judgment in favor of the yacht club because they substantially complied with the constitution's notice provisions, and the expelled members were not denied an opportunity to be heard at the meeting. *Id.* at 269.

In this case, Cauchon was not a Board member and had no right to participate as a Board member in the decision to terminate his employment. His contention that he was improperly removed as a Board member flies in the face of the binding authority found in the Ohio Supreme Court's *Robb v. Chagrin Lagoons Yacht Club* decision. As in that case, HRO's Board provided slightly fewer days – 12 instead of 14 – notice of the Board meeting. Nonetheless, Cauchon knew about the meeting; he asked for it and attended it but refused to vote on his removal, like the board members in *Robb*. Like the *Robb* court, this Court should find that HRO substantially complied with its bylaws and effectively removed Cauchon as a Board member. *See Robb*, 75 Ohio St. at 268-69.

At a minimum, a factual dispute exists that precludes summary judgment in favor of Cauchon on HRO's counterclaims about whether Cauchon was a Board member at the time his employment was terminated. Then-Board chair Dwayne Steward understood that Cauchon was not a Board member at the time. (Steward Dep. 16:7-10, ECF No. 103-2 at PageID 2609.) Likewise, the corporate representative of HRO testified that Cauchon was not a Board member. (HRO Dep. 12:14-21, ECF No. 103-1 at PageID 2502.) Mr. Steward explained that the Board was confused as to why Cauchon was claiming to be a Board member. The Board only voted to remove Cauchon as a Board member out of an abundance of caution and based on the advice of counsel. (Steward Dep. 75:2-13, ECF No. 103-2 at PageID 2624.)

In addition, under Ohio law, a board vote is not necessary for it to act, but rather, the law allows board action through the written consent of its members. Ohio Rev. Code § 1702.25(A).

That is precisely what HRO's Board did: each Board member signed the November 4, 2024 letter terminating Cauchon's employment. (Steward Dep. 73:12-14, ECF No. 103-2 at PageID 2623.) Even if Cauchon was a Board member, he was an interested Board member who had no right to participate in the Board's decision to terminate his employment. *See Tuttle v. Collins*, 2020-Ohio-4062, ¶ 32 (8th Dist.) (explaining the duty of loyalty is breached when a director is permitted to vote upon a matter in which they may derive a personal benefit). Nor was his signature required under § 1702.25(A) and HRO's bylaws.

### C. Cauchon Defamed HRO.

The Court should deny Cauchon's request for summary judgment on HRO's defamation claim because he knowingly made false statements about HRO to third parties that qualified as defamation per se. To prove defamation, HRO must show that Cauchon: (1) "made a false and defamatory statement concerning [HRO], (2) the statement was published, (3) [HRO] was [damaged], and (4) [Cauchon] acted with the required degree of fault." *McClure v. Ohio Dep't of Rehab & Corr.*, 2020-Ohio-1035, ¶ 10 (10th Dist.). "Generally, a statement will be considered defamation per se if the statement tends to injure a person in his or her trade, profession, or occupation." *Webber v. Ohio Dep't of Pub. Safety*, 2017-Ohio-9119, ¶ 36 (10th Dist.); *see also Sygula v. Regency Hosp. of Cleveland East*, 2016-Ohio-2843, ¶ 18 (8th Dist.) ("[a]n allegation that one has acted unprofessionally constitutes defamation per se"). Finally, "[i]f a statement is defamation 'per se,' both damages and actual malice are presumed." *Webber*, 2017-Ohio-9119 at ¶ 36. In his Motion, Cauchon failed to address HRO's counterclaim for defamation per se, so he cannot now contend that he did not have the requisite intent – malice – or that damages are presumed. *Meeks v. Norfolk S. Ry. Co.*, 2023 U.S. Dist. LEXIS 52442, at *16 (S.D. Ohio Mar. 27,

2023) ("It is well established that a party 'cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in the opposition.'")

In fact, Cauchon concedes that he made the defamatory statements to HRO's business partners to damage its professional reputation and to try to force the ODH to take adverse action against HRO. (Cauchon Dep. Vol. II, 115:10 – 118:24, ECF No. 102-2, PageID 2229-30.) After his employment was terminated, Cauchon repeatedly told third parties that HRO had a conflict of interest because its employee also worked for "Kloxxado's lobbyist." He told Next Distro – HRO's business partner who helps distribute naloxone. (Id. at 138:3 – 139:11, ECF No. 102-2, PageID 2235.) He repeatedly told ODH. (Cauchon Dep. Vol. II, 115:10 – 118:24, ECF No. 102-2, PageID 2229-2230; Email, ECF No. 102-2, PageID 2333; 2024 Letter, ECF No. 102-2, PageID 2348-2349; 2025 Letter, ECF No. 102-2, PageID 2334-2345) And he told any news media outlet that would listen – specifically, Signal Ohio published an article relying on statements made by Cauchon. (HRO Dep., 131:4-23, ECF No. 103-1, PageID 2535.)

Contrary to his assertions, Cauchon also made the statement knowing it was false, or at a minimum, with a reckless disregard for its truth. First, he repeated the defamatory statement after he knew that HRO had conducted an independent investigation into the alleged conflict of interest. (Cauchon Dep. Vol. II, 118:3-24, ECF No. 102-2, PageID 2230.) He refused to participate in that investigation claiming that HRO's counsel also had a conflict of interest. (Cauchon Dep. Vol. I, 101:17 – 102:5, ECF No. 102-1, PageID 1928.) He knew that the Board, based on the advice of counsel, had concluded that its employee did not have a conflict of interest. (Cauchon Dep. Vol. II, 118:3-24, ECF No. 102-2, PageID 2230.) Second, he knew that he had raised the issue with ODH and that ODH had the ability to investigate and take action but had not done so. (Id., 115:10 – 118:24, ECF No. 102-2, PageID 2229-2230.) Rather than rely on ODH's determination, he

continued his defamatory crusade. (Id.) Third, Cauchon admits that he does not know what qualifies as a conflict of interest. (Id., 102:22 – 103:2, 104:25 – 105:3, ECF No. 102-2, PageID 2226.) He uses the phrase discriminately to describe HRO's employee and HRO's independent counsel but does not believe it accurately describes his own conflict of interest when it came to the Board's decision to terminate his employment. (Id.) Fourth, he knew that the complained-about HRO employee was not a lobbyist for Kloxxado and that her other employer was not registered in Ohio as a "Kloxxado lobbyist." (Id. at 107:2-4; 108:8-10, ECF No. 102-2 at PageID 2227.)

Although damages to HRO from Cauchon's defamatory statements should be presumed, HRO also has provided evidence of the damages it has incurred. For example, HRO retained counsel and incurred legal fees to respond to Plaintiff's defamatory statements. (HRO Dep., ECF No. 103-1, PageID 2526-28.) HRO staff also spent time and attention responding to third parties who expressed concern over these statements. (Id.)

## IV. CONCLUSION

Cauchon's tortious conduct and defamatory statement after his employment was terminated caused real damage to HRO that persists today. His misconduct cannot be excused by his assertion that his termination was ineffective because he was not involved in the Board's decision. Accordingly, the Court should deny Plaintiff's Motion for Summary Judgment as to the Counterclaims.

Respectfully submitted:

/s/ Elizabeth L. Moyo
Elizabeth L. Moyo (0081051) (Trial Attorney)
Helen Sudhoff (0101259)
Porter, Wright, Morris & Arthur LLP OH
41 South High Street
Columbus, OH 43215
614-227-2106
emoyo@porterwright.com
hsudhoff@porterwright.com
Counsel for Counterclaim Plaintiff HRO

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing was electronically filed on September 21, 2026, with the Clerk of the Court by using the CM/ECF System and that the foregoing document is being served this day on all counsel of record via transmission of the Notice of Electronic Filing generated by CM/ECF.

Dennis Cauchon
327 East Broadway
Granville, OH 43023
Email: denniscauchon@gmail.com

*Plaintiff*

David A. Shearer, Jr.
Garvey Shearer Nordstrom, PSC
2388 Grandview Drive
Ft. Mitchell, KY 41017
Email: dshearer@gsn-law.com

*Attorney for Counterclaim Defendant, Dennis Cauchon*

Steven A. Chang
Melvin J. Davis
Mrinali Sethi
Reminger, Co., LPA
200 Civic Center Drive, 8th Floor
Columbus, OH 43215
Email: schang@reminger.com
mdavis@reminger.com
msethi@reminger.com

*Attorneys for Defendants*

*/s/ Elizabeth L. Moyo*
Elizabeth L. Moyo