**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DENNIS CAUCHON, et al.** | : | **CASE NO. 2:25-cv-00075** |
| | : | |
| **Plaintiff,** | : | **JUDGE: Edmund A. Sargu** |
| | : | **Magistrate: Chelsey M. Vascura** |
| **v.** | : | |
| | : | **PLAINTIFF/COUNTERCLAIM** |
| **DWAYNE STEWARD, et al.** | : | **DEFENDANT DENNIS CAUCHON'S** |
| | : | **REPLY IN SUPPORT OF HIS MOTION** |
| **Defendants.** | : | **FOR SUMMARY JUDGMENT ON** |
| | : | **COUNTERCLAIM PLAINTIFF HARM REDUCTION OHIO'S COUNTERCLAIMS** |

## I. INTRODUCTION

Harm Reduction Ohio's ("HRO") Opposition fails to cure the fatal evidentiary deficits that compel summary judgment under Federal Rule of Civil Procedure 56. Faced with a complete lack of evidence on the essential elements of its seven counterclaims, HRO attempts to substitute legal conclusions for proof, repeatedly conflating Dennis Cauchon's admission of underlying operational acts with an admission of civil or criminal liability. Cauchon does not dispute that he communicated with organizational partners, maintained administrative access to computer accounts he managed as President, paid lease expenses for HRO's Granville office, or retained the internet domain name he purchased before HRO's corporate existence. However, Cauchon has never admitted, and HRO has completely failed to prove, that any of these actions were unauthorized, unlawful, tortious, or damaging.

This evidentiary void is dispositive. Under Rule 56, a party bearing the burden of proof at trial cannot survive summary judgment merely by slapping tortious labels onto ordinary operational conduct. Following extensive discovery, HRO's own designated Rule 30(b)(6)

corporate representative admitted under oath that HRO cannot identify a single lost client, a single lost business opportunity, or any quantifiable financial or reputational injury resulting from Cauchon's conduct or communications. Instead of providing concrete evidence, HRO asks this Court to construct actionable claims out of thin air, inviting impermissible speculation to infer statutory loss, criminal intent, conversion damages, tortious interference, and reputational harm from generalized, unquantified references to attorney fees, staff time, and technical overhead.

HRO's defamation claim is similarly defective as a matter of law. The record confirms that Cauchon's statements accurately described a documented, undisputed financial and professional arrangement. HRO's Chief Program Officer simultaneously served as Director of Government Advocacy for a pharmaceutical company, was hired specifically on behalf of Hikma Pharmaceuticals to support Hikma's lobbying team, and actively participated in HRO's procurement of Hikma's proprietary drug, Kloxxado. HRO cannot transform this substantially true description, or Cauchon's protected evaluative opinion that such dual employment constituted a conflict of interest, into actionable defamation simply by invoking the label of defamation *per se*.

Finally, HRO's reliance on Cauchon's alleged termination cannot supply the missing proof required to salvage its claims. The record shows a genuine governance dispute over Cauchon's ongoing directorship, the mandatory board notice required by HRO's Bylaws, and the legal authority behind the short-notice board meetings. More fundamentally, however, every counterclaim fails because HRO has not proven essential elements, including statutory loss, criminal intent, purpose to deprive, actionable falsity, proximate causation, and recoverable damages. Summary judgment in Cauchon's favor is required on all counts.

## II. STATEMENT OF FACTS

Dennis Cauchon founded Harm Reduction Ohio in 2017 and personally purchased the organization's primary internet domain name (harmreductionohio.org) with his own funds before HRO's formal incorporation. (Cauchon Dep., Vol. I, 11:3-5, 17:1-21, 18:3-18; HRO Counterclaim ¶¶ 2, 8). Under HRO's governing Bylaws, adopted January 29, 2019, the Bylaws expressly delegated day-to-day operational and administrative responsibilities to its President and strictly required two weeks' advance written notice for all regular and special meetings of the Board of Directors. (HRO Bylaws art. III, §§ 3, 10; art. V, § 1).

Before November 2024, Cauchon had served as a voting director since at least 2018 and had consistently voted on substantive corporate matters without objection. (Cauchon Dep., Vol. I, 26:18-22). Notwithstanding these established facts, HRO contends that its directors terminated Cauchon's employment via written action on November 4, 2024. (HRO Counterclaim ¶ 12; Termination Letter (Nov. 4, 2024)). Cauchon maintains that this purported board action was legally void and ineffective because he was a voting director entitled to statutory and bylaw notice, which HRO failed to provide. (R.C. §§ 1702.19, 1702.28, 1702.31(A); HRO Bylaws art. III, §§ 3, 10).

The parties also dispute the legal characterization of Cauchon's subsequent administrative actions. Operating under the well-founded belief that he remained HRO's lawful President and administrative officer, Cauchon continued to manage institutional accounts and pay the ongoing lease obligations for HRO's office facility in Granville. (Cauchon Dep., Vol. II, 83:21-85:12, 94:7-8, 96:21-25). Cauchon explicitly testified that his sole motivation in maintaining the lease was to ensure that HRO, not Cauchon personally, could seamlessly continue its operations at the Granville location. (Cauchon Dep., Vol. II, 94:7-8, 96:21-25). In April 2025, HRO retrieved all of its

physical office property fully intact. (HRO Counterclaim ¶ 23; Turner-Bicknell Dep. 58:20-24). HRO subsequently established replacement banking and QuickBooks accounts without incurring any quantified loss. (Turner-Bicknell Dep. 83:17-23, 101:22-102:1).

The defamation counterclaim arises directly from Cauchon's accurate statements regarding HRO's employment structure and potential conflicts of interest. The contract HRO's Chief Program Officer, Amandalynn Reese, executed on behalf of Hikma Pharmaceuticals as Director of Government Advocacy expressly obligated her to support Hikma's lobbying team and to funnel her compensation through the pharmaceutical consulting firm Velocity Bio Group. (Reese Dep. 20:10-14, 39:20-40:3, 42:4-6, 50:7-15, 51:11-13, 66:6-9, 67:13-16, 73:12-14; Reese Employment Agreements, Exs. 1 & 2). During this exact same timeframe, Reese actively participated in submitting HRO's orders for Kloxxado, a Hikma product, under a state grant program. (Reese Dep. 121:6, 129:4-6, 131:4-16, 134:4-8, 135:16-20).

When deposed as HRO's designated Rule 30(b)(6) representative, HRO's corporate witness admitted that the organization could not identify any lost client, any lost business opportunity, or any quantifiable financial or reputational damage caused by Cauchon's conduct or communications. (Turner-Bicknell Dep. 130:14-134:1). Rather than offering competent, claim-specific calculations, HRO relies exclusively on generalized assertions of attorney fees, technical overhead, internal staff time, and lease payments.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). A complete failure of proof concerning an essential element

of the nonmoving party's case necessarily renders all other facts immaterial. (*Id.*). To survive summary judgment, the nonmoving party cannot simply rest on mere allegations or label admitted conduct as tortious. It must present affirmative, competent evidence from which a reasonable jury could return a verdict in its favor. (*Hamilton v. Potter*, No. 2:05-cv-231, 2008 U.S. Dist. LEXIS 72108 (E.D. Tenn. Sep. 22, 2008)).

## IV. ARGUMENT

### a. HRO Has Failed to Produce Evidence of the Qualifying Statutory Loss Required for Its CFAA Claim (Count I).

HRO's Computer Fraud and Abuse Act (CFAA) claim requires proof that Cauchon's alleged computer access caused an aggregate loss of at least $5,000 during a one-year period. (18 U.S.C. § 1030(a)(2)(C), (c)(4)(A)(i)(I), (g)). Although HRO's counterclaim pleaded costs related to investigating access, restoring administrative controls, and securing systems, its Opposition fails to present competent evidence or a claim-specific calculation establishing that it incurred qualifying statutory loss reaching the $5,000 threshold. Instead, HRO points only to broad, lump-sum categories comprising legal fees, technical assistance, staff time, and office rent.

HRO's inclusion of office rent payments cannot satisfy the strict statutory definition of loss under the CFAA. (*see* 18 U.S.C. § 1030(e)(11) (defining "loss" as reasonable costs of responding to an offense, conducting a damage assessment, and restoring data/systems)). These lease payments went directly to HRO's landlord to maintain HRO's physical operational headquarters, and Cauchon maintained the lease so HRO could continue occupying the facility. (Cauchon Dep., Vol. II, 94:7-8, 96:21-25). Merely labeling these operational rent payments as "unauthorized" does not convert them into costs associated with responding to a computer disruption, assessing system integrity, or restoring data under 18 U.S.C. § 1030(e)(11).

Similarly, HRO's assertion that it was forced to open replacement financial accounts fails to satisfy its evidentiary burden. While HRO's Rule 30(b)(6) witness confirmed that replacement banking and QuickBooks accounts were established, HRO presented zero evidence quantifying the costs, if any, associated with opening those accounts. (Turner-Bicknell Dep. 83:17-23, 101:22-102:1). Because HRO has failed to produce evidence from which a jury could reasonably find the threshold statutory loss, Count I fails as a matter of law.

**b. HRO Cannot Establish the Requisite Criminal Intent to Support Its State Computer and Civil Theft Claims (Counts II and III).**

HRO's state-law unauthorized use and civil theft claims demand proof of specific criminal mental states. To prevail on its state computer claim under R.C. § 2913.04 and § 2307.60, HRO must prove that Cauchon knowingly accessed or used computer systems without consent. To prevail on its civil theft claim under Ohio law, HRO must prove that Cauchon acted with a specific criminal purpose to deprive HRO of property, executed through deception, threat, or intimidation. (R.C. §§ 2307.60, 2913.02(A)(1)-(5)).

The record contains no evidence that Cauchon acted through deception, threat, or intimidation. HRO relies entirely on the flawed premise that Cauchon's operational authority ceased instantly on November 4, 2024. However, Cauchon acted in good faith on counsel's advice that the unnoticed board actions were legally invalid, and he continued paying the organizational lease because he genuinely believed he remained HRO's lawful President. (Cauchon Dep., Vol. I, 35:25-36:21).

This uncontradicted evidence of a *bona fide* governance dispute is fundamentally incompatible with HRO's demand that the Court infer criminal intent from continued administrative management. This distinction is especially stark regarding HRO's physical property, all of which was returned completely intact in April 2025, and the office rent payments,

which directly benefited HRO's physical presence rather than Cauchon personally. (HRO Counterclaim ¶ 23; Cauchon Dep., Vol. II, 94:7-8, 96:21-25). Having failed to produce evidence establishing the mandatory criminal intent for Counts II and III, summary judgment must be granted.

**c. HRO's Conversion Claim Fails for Lack of Proof of Wrongful Dominion and Recoverable Damages (Count IV).**

HRO's conversion claim encompasses four distinct categories: physical office property, digital accounts, the internet domain name, and funds used for office rent. The evidentiary record forecloses recovery on every category.

First, HRO recovered all physical office property completely intact in April 2025. (HRO Counterclaim ¶ 23; Turner-Bicknell Dep. 58:20–24). Under established Ohio law, the full return of property directly eliminates conversion damages, as the return or payment of full value leaves no compensable injury under a conversion theory. (*Silverman v. Am. Income Life Ins. Co. of Indianapolis*, 2001-Ohio-8890, 32 (10th Dist.)). HRO has identified no physical property that was lost, damaged, or diminished in value.

Second, HRO cannot establish exclusive ownership over the website domain merely by pointing to its historic use. Unrebutted evidence shows that Cauchon purchased the domain name with his own funds before HRO's incorporation and later permitted the organization to use it during his presidency. (Cauchon Dep., Vol. I, 17:1-21, 18:3-18). HRO's conclusory assertion of ownership cannot overcome this uncontradicted proof of prior personal acquisition or establish wrongful dominion.

Third, Cauchon's payment of office rent did not constitute an unauthorized disposition of funds for his personal benefit. The payments directly satisfied the lease for HRO's Granville office, executed to preserve HRO's tenancy pursuant to presidential authority under Bylaws Article V,

Section 1. HRO's subjective disagreement with that operational choice does not transform an organizational expense into actionable conversion.

Fourth, while Ohio law permits recovery of ascertainable losses naturally flowing from a conversion when supported by concrete evidence, HRO has provided no such proof. Instead of demonstrating actual, quantified damages resulting from a deprivation of property, HRO offers only unsegregated categories of attorney fees, technical costs, and staff time. Because HRO's corporate representative conceded that HRO suffered no quantifiable injury, Count IV fails for a total lack of recoverable damages. (Turner-Bicknell Dep. 130:14-134:1).

**d. HRO Cannot Establish Tortious Interference Absent Evidence of Third-Party Non-Performance or Contractual Breach (Count V).**

HRO's tortious interference claim alleges that Cauchon improperly disrupted its business relationships with Chase Bank and the Ohio Department of Health ("ODH"). Although HRO highlights Cauchon's communications with these entities and his request that ODH evaluate potential organizational conflicts, HRO has produced zero evidence that ODH, Chase Bank, or any other third party breached a contract, terminated a relationship, or refused to do business with HRO as a result.

The undisputed factual record affirmatively disproves causation and injury. ODH renewed HRO's grant and maintained its funding relationship, while Chase Bank never breached or terminated any financial agreement with HRO. (Cauchon Dep., Vol. II, 144:21-25). HRO's Rule 30(b)(6) representative admitted under oath that HRO cannot identify a single lost client, lost grant, lost opportunity, or quantifiable financial harm caused by Cauchon's outreach. (Turner-Bicknell Dep. 130:14-134:1).

HRO attempts to bypass this evidentiary failure by characterizing its internal response costs, such as legal fees and staff hours, as interference damages. However, actionable tortious

interference strictly requires proof of purposeful conduct that induces or causes a third party not to perform or enter into a contract or business relationship. Internal operational time spent responding to communications cannot substitute for the essential element of third-party breach or refusal. Count V fails as a matter of law.

**e. The Defamation Claim Fails Because the Challenged Statements Are Substantially True and Protected Evaluative Opinion (Count VI).**

HRO's reliance on the doctrine of defamation *per se* cannot overcome the fundamental threshold requirement of falsity. Under Ohio law, substantial truth is a complete defense to defamation. (*Swoope v. Osagie*, 2016-Ohio-8046, ¶ 33 (8th Dist.)). Courts evaluate the core "gist" of the challenged statement, and where a publication is substantially accurate, the claim fails at the threshold without reaching secondary elements (*Id.*).

Cauchon's statements were substantially true. Undisputed documents prove that HRO's Chief Program Officer, Amandalynn Reese, simultaneously worked for Velocity Bio Group under an employment agreement executed on behalf of Hikma Pharmaceuticals, which appointed her Director of Government Advocacy and required her to support Hikma's lobbying team. (Reese Dep. 20:10-14, 39:20-40:3, 42:4-7, 50:7-15, 51:11-13, 66:6-9, 67:13-16, 73:12-14; Reese Employment Agreements, Exs. 1 & 2). Concurrently, Reese actively participated in placing HRO's institutional orders for Kloxxado, a drug manufactured by Hikma. (Reese Dep. 121:6, 131:4-16, 134:4-8, 135:16-20). Describing an executive who is contractually bound to support a pharmaceutical company's lobbying team while ordering that company's drug as working for a "Kloxxado lobbyist" carries precisely the same factual gist as the underlying contracts.

Furthermore, Cauchon's characterization of this dual relationship as a "conflict of interest" constitutes nonactionable opinion as a matter of law. Whether a statement expresses fact or opinion is a question of law determined by analyzing the specific language, verifiability, general context,

and broader context. (*Wampler v. Higgins*, 93 Ohio St.3d 111 (2001)). Cauchon fully disclosed the underlying dual-employment arrangement to regulators and partners while requesting an independent review. (Cauchon Dep., Vol. II, 148:18-150:3, 153:2-10). Expressing an evaluative judgment based on fully disclosed, accurate facts is the hallmark of protected opinion, not a verifiable assertion of undisclosed criminal conduct.

HRO's reliance on its internal investigation finding no conflict does not create actionable falsity. An internal committee's subjective conclusion cannot erase the objective facts of Reese's dual employment, her contractual obligation to Hikma's lobbying efforts, or her involvement in Kloxxado orders. Moreover, HRO's corporate witness admitted under oath that HRO suffered no lost business or quantifiable reputational injury. (Turner-Bicknell Dep. 130:14–134:1). Count VI must be dismissed.

**f. HRO's Declaratory Judgment Claim Fails Alongside its Defective Substantive Counterclaims (Count VII).**

Count VII seeks broad judicial declarations under 28 U.S.C. § 2201(a) that HRO exclusively owns all disputed accounts, that Cauchon possesses no ownership or possessory interest, and that Cauchon's access was unlawful. Because this claim is entirely derivative of the substantive statutory and conversion counterclaims, it cannot survive their dismissal.

The record affirmatively precludes the categorical declarations HRO seeks. Unrebutted evidence shows that Cauchon personally purchased the internet domain before HRO's incorporation. (Cauchon Dep., Vol. I, 17:1-21, 18:3-18). HRO had already established replacement banking and software accounts, and HRO recovered all physical property intact. (Turner-Bicknell Dep. 58:20-24, 83:17-23, 101:22-102:1). Furthermore, the legality of Cauchon's access turns on the contested validity of his termination and the substantive claims that HRO has failed to prove.

HRO cannot obtain a blanket declaration of exclusive ownership, and summary judgment must be entered for Cauchon on Count VII.

## V. CONCLUSION

HRO's Opposition exposes a complete absence of evidence supporting the essential elements of its counterclaims. HRO has failed to prove qualifying statutory loss under the CFAA, criminal intent under state computer and theft statutes, wrongful dominion or damages for conversion, third-party breach or refusal for tortious interference, actionable falsity or non-opinion statements for defamation, or any legal basis for declaratory relief.

Plaintiff and Counterclaim Defendant Dennis Cauchon respectfully requests that this Court grant his Motion for Summary Judgment, enter judgment in his favor on all seven counterclaims asserted by Harm Reduction Ohio, dismiss those counterclaims with prejudice, and award all further relief that the Court deems just and proper.

Respectfully submitted,

GARVEY | SHEARER | NORDSTROM, PSC

*/s/ David A. Shearer, Jr.*
David A. Shearer, Jr. (0070805)
2388 Grandview Dr.
Ft. Mitchell, KY 41017
t: 859.308.1490
f: 866.675.3676
dshearer@gsn-law.com
*Attorney for Plaintiff/Counterclaim Defendant,*
*Dennis Cauchon*

## CERTIFICATE OF SERVICE

I certify that on October 5, 2026, I filed a copy of the foregoing electronically. Notice of this filing will be sent to all parties of record through the Court's CM/ECF system. Parties may access this filing through the Court's CM/ECF system.

*/s/ David A. Shearer, Jr.*
David A. Shearer, Jr.