**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| *Dennis Cauchon, et al.*, | ) | Case No. 2:25-cv-00075 |
| Plaintiffs, | ) | Judge Edmund A. Sargus, Jr. |
| v. | ) | Magistrate Judge Chelsey M. Vascura |
| *Dwayne Steward, et al.*, | ) | |
| Defendants. | ) | |

---

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff's opposition brief confirms that Defendants' Motion for Summary Judgment should be granted. As to Plaintiff's FCA retaliation claim, this Court can pick any one of several independent reasons to dismiss the claim, including:

(1) **Plaintiff has abandoned his "AKS violation" theory altogether**. Plaintiff makes no attempt to even argue that he had a reasonable belief an AKS violation was occurring at any time.

(2) **Plaintiff admits he was solely concerned with compliance with a state contract**. Plaintiff tacitly concedes that it was HRO's state contract—and not a concern of federal fraud—that motivated him.

(3) **Plaintiff concedes that he was insubordinate to the Board.** Plaintiff does not dispute he refused to comply with his administrative leave and refused to participate in the investigation with HRO's counsel. These reasons, even standing alone, are more than sufficient to justify the termination of his employment.

(4) **Plaintiff has no evidence of pretext beyond baseless speculation**. Plaintiff's 14-page narrative fails to present any actual evidence of pretext and does not dispute the underlying facts supporting the termination of his employment.

The unconverted record demonstrates that Plaintiff was simply an employee spiraling out of control. As there is no dispute the HRO Board **<u>followed the advice of its counsel</u>** and terminated

Plaintiff's employment for insubordination, HRO[1] is entitled to judgment as a matter of law.

As to Plaintiff's declaratory judgment claim, Plaintiff offers nothing of substance. Plaintiff presents this Court with no authority contrary to the Supreme Court of Ohio's controlling decision in *Robb v. Chagrin Lagoon Yacht Club*, 75 Ohio St.3d 264, 268 (1996). Put simply, **substantial compliance**—not strict compliance—is the law in Ohio. *Id.* And this Court is required to follow the decision of Ohio's highest court. *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (holding that federal courts must "follow the decisions of the state's highest court when that court has addressed the relevant issue"). Plaintiff's arguments for any other standard must be denied on their face. And it is beyond dispute that HRO substantially complied with its Bylaws when it removed Plaintiff as an alleged "director" of HRO on October 27, 2024.

For these reasons, summary judgment should be granted without delay in favor of all Defendants and Plaintiff's claims dismissed, with prejudice.

## I. PLAINTIFF'S FCA RETALIATION CLAIM FAILS AS A MATTER OF LAW AND UNDISPUTED FACT.

This Court can easily dismiss Plaintiff's FCA retaliation claim—Plaintiff has simply failed to establish a *prima facie* case of retaliation based on his admissions and has failed to rebut the overwhelming evidence justifying his termination. At the time of Plaintiff's September 3, 2024, letter to the ODH, he did not have any actual concerns of "federal fraud." Nor has he ever. Indeed, Plaintiff goes in circles trying to describe what his alleged "protected activity" even was. (*See* Doc. # 112; PageID # 3090-96). Plaintiff now appears to allege that his "protected activity" is not the ODH letter itself, but rather, some other vague, unidentified "investigation" and/or his threatening letters to the Board. (*Id.* at PageID # 3090). But it is too late for Plaintiff to change

[1] Plaintiff concedes that his FCA retaliation claim fails against each individual defendant. (Doc. # 112, PageID # 3115). Accordingly, only his claim against HRO remains in dispute.

his story now. Plaintiff's admissions mandate dismissal of his FCA claim for several, independent reasons.

***1. Plaintiff has completely abandoned his AKS violation theory***. This lawsuit was filed based on Plaintiff's theory that he was investigating and/or discovered alleged violations of the AKS purportedly arising from AmandaLynn Reese's employment with Velocity BioGroup. (*See* Doc. # 59, PageID # 1127, ¶¶ 173-180). This was the exclusive theory presented in the Amended Complaint. *Id.* But now, after Plaintiff's two-year witch hunt of AmandaLynn Reese has come up short, Plaintiff has changed his mind. Indeed, Plaintiff makes no attempt to even argue that he had both a *subjective* and *objective* good-faith belief that AKS violations were occurring. (*See generally Id.* at PageID # 3090-96). Rather, Plaintiff merely states that his claim is somehow "not confined … to an Anti-Kickback Statute theory." (*Id.* at PageID # 3090).

Plaintiff's concession is fatal to his FCA retaliation claim. Plaintiff tacitly concedes he lacked a subjective and objective, reasonable belief that an AKS violation was occurring at any time. (*See* Defs.' Mot. for S.J., Doc. # 107, PageID # 2969-73) (arguing, at length, that Plaintiff lacked a subjective and objective belief an *AKS violation* was occurring); (*See* Doc. # 112, PageID # 3091-93) (making no attempt to argue otherwise). As Plaintiff makes no attempt to save his AKS violation theory, summary judgment should be granted in its entirety.

***2. Plaintiff has failed to identify any other provisions of the FCA he reasonably believed were being violated at the time of his investigation***. In order to establish a prima facie case for an FCA retaliation claim, it is Plaintiff's burden to demonstrate that his "efforts [were] to stop 1 or more violations of this subchapter.'" *Jones-McNamara v. Holzer Health Sys.*, 630 F. App'x 394, 397 (6th Cir. 2015). Having abandoned his AKS violation theory, Plaintiff fails to identify for the Court what *other* provisions of the FCA were purportedly being violated at the

time of his letter to the ODH (or at any other time). Plaintiff makes only a generic reference to Section II.A of his Complaint (*See* Doc. # 112, PageID # 3093), and vague references to his ongoing "investigation," without any explanation whatsoever as to what alleged violations of the FCA he was purportedly trying to stop. (*Id.*). Plaintiff's failure to identify—let alone present any evidence of—an alleged FCA violation separate from his original AKS theory is fatal to his claim. *See Jones-McNamara*, 630 App'x at 397 (holding that "a plaintiff's activities must reasonably embody 'efforts to stop' FCA violations" to establish a prima facie FCA retaliation claim).

***3. Plaintiff concedes that he was concerned with compliance with a state contract; not federal fraud.*** Ironically, during Plaintiff's pivot away from his original AKS theory, Plaintiff now concedes that the reason for his disclosure **was not** alleged violations of the AKS statute, but rather, general concerns with compliance with HRO's state contract. (*Id.* at PageID # 3091-92). This admission, too, is fatal to his FCA claim.

Federal law is clear that generalized concerns regarding compliance with a contract or regulations is not sufficient to constitute a "protected activity" as a matter of law. *Fakorede v. Mid-South Heart Ctr., P.C.*, 709 F. App'x 787, 790 (6th Cir. 2017). The law is equally clear that an FCA retaliation claim cannot be based on alleged conduct with a state agency alone. *Id.* (alleged concerns regarding fraud against a state hospital insufficient to constitute a protected activity).

Here, Plaintiff tacitly concedes that his "investigation" was not motivated by concerns of federal fraud. Rather, his "investigation" concerned whether "HRO's categorical no-conflict representation *remained* accurate" to the State of Ohio. (*Id.*, PageID # 3093). Indeed, Plaintiff dedicates nearly two (2) pages of argument to illuminate that his sole concern was making sure that HRO was complying with the language of its contract with the ODH. (*Id.* at PageID # 3092-93). The word "fraud" doesn't even appear in this argument. *Id.*

The FCA simply does not apply to generalized concerns of compliance with state contracts. *Mid-South Heart Ctr., P.C.*, 709 F. App'x at 790. Plaintiff's claim fails as a matter of law.

***4. Plaintiff's alleged "protected activity" does not concern allegations of federal fraud.*** Plaintiff's link to alleged "federal fraud" is simply too attenuated to support an FCA retaliation claim. At this juncture, Plaintiff's argument is purely that the State of Ohio receives a grant from the federal government—and that's it. (*See generally* Doc. # 111, PageID # 3096-97). Plaintiff identifies no invoices to the *federal government*. Plaintiff identifies no contract between HRO and the *federal government*. Plaintiff identifies no cost reports to the *federal government*. Plaintiff identifies no certifications, submissions, applications, or any other material from HRO to the *federal government*.

The only case Plaintiff cites to does not even support his claim. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, makes clear that a reimbursement request must be related to "federal funds **under federal benefits programs**." 579 U.S. 176, 182 (2016) (emphasis added). The Court specifically noted in its decision that Medicare/Medicaid – unlike the *state* program at issue here – is "**a joint state-federal program** in which healthcare providers serve poor or disabled patients and submit claims for government reimbursement." *Id.* at 180 (emphasis added).

Plaintiff has presented no evidence that Project DAWN – created *solely* by the State of Ohio – is a "federal benefit program." Plaintiff has presented no evidence that the State of Ohio submits anything for "reimbursement" to the federal government *at all*. Indeed, Project DAWN itself pre-dates the grant Plaintiff references by at least ten (10) years.[2] And Plaintiff has offered

[2] See https://odh.ohio.gov/know-our-programs/project-dawn/, last accessed Oct. 5, 2026 (noting project Dawn is a state program that began in 2012).

no authority for the proposition that receiving a federal grant automatically transforms all of a state's local programs into "federal benefit programs." This is simply not the law.

***5. Plaintiff has failed to meet his burden to show that the reasons proffered for his termination are <u>both</u> false and a pretext for retaliation.*** HRO has made clear that the reason for the termination of Plaintiff's employment was his repeated insubordination and pure hubris, beginning on September 3, 2024—when he reneged on his explicit arrangement with the Board[3]—and culminating on November 4, 2024, when he changed the locks on HRO's office supplies.[4] (*See* Defs.' Mot. for S.J., Doc. # 107, PageID 2964) (detailing the chronology of Plaintiff's insubordination). Contrary to Plaintiff's assertion otherwise, the *reason* for his termination has never changed – but the examples of his insubordination continued to pile up.

Plaintiff's only response is to quibble with dates. Plaintiff contends that *some* of the laundry list of insubordinate acts he committed while on administrative leave occurred after the Board initially voted to terminated him based on Ms. Nelson's report on October 13. (*See generally* Doc. # 112, PageID # 3102-05). This isn't evidence of pretext. This is evidence **<u>of an employee who was spiraling out of control</u>** from October 13 through November 4, 2024.

The fact that some of Plaintiff's insubordination occurred *before* October 13 and some *after* October 13, 2024, simply does not matter. It is beyond dispute that: (1) as of October 13, Plaintiff had refused to comply with his administrative leave; (2) as of October 13, Plaintiff had refused to cooperate with the investigation of Ms. Nelson; and (3) as of October 13, HRO's counsel explicitly

[3] Plaintiff concedes that "[a]n arrangement did exist, and Plaintiff does not deny it." (Doc. # 112, PageID # 3108).

[4] Plaintiff attempts to use the deposition of HRO as evidence that HRO has somehow "changed its rationale" over time. (*See* Doc. # 112, PageID # 3102). Not so. HRO's representative made clear that Plaintiff was fired for insubordination and that "[t]here were **<u>lots of examples</u> of insubordination**." (Doc. # 103-1, PageID # 2508) (emphasis added). The fact that there are ***<u>so many</u>*** instances of insubordination that occurred does not help Plaintiff.

recommended the termination of Plaintiff's employment. (*See, e.g.*, Doc # 107-13) (Plaintiff refusing to comply with his administrative leave) (Cauchon Dep. II, Doc. # 102-2, at 13:2-7) (admitting he would not participate in the investigation of Ms. Nelson); (Doc. # 107-11, PageID # 3039) (HRO's counsel recommending the termination of Plaintiff's employment due to his behavior and insubordination); (*see also* Deposition of Harm Reduction Ohio, Doc. # 103-1, at 22:16-24:6) (summarizing the long list of insubordinate acts leading to Plaintiff's termination). Accordingly, *even if* this Court only looks to his actions prior to October 13, 2024, there is overwhelming evidence supporting the Board's decision to terminate his employment.

Plaintiff simply has failed to meet his burden to prove, as he must, that his insubordinate acts were *both* false *and* a pretextual reason for his termination. *See Harris v. Metro. Gov't of Nashville and Davidson County*, 594 F.3d 476, 486 (6th Cir. 2010) ("A defendant's proffered reason **cannot be proved to be a pretext** 'unless it is shown *both* that the reason was false, *and* that discrimination [or retaliation] was the real reason.") (emphasis added) (quoting *St. Mary's Honor Ctr. V. Hicks*, 509 U.S. 502, 515 (1993)). Stated differently, Plaintiff would need to show Defendants "**made up [their] stated reasons** to conceal intentional [retaliation]." *White v. FCA US LLC*, 2026 U.S. Dist. LEXIS 53953, at *26-27 (E.D. Mich. Mar. 16, 2026) (quoting *Chen v. Dow Chem Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)) (emphasis added). Here, none of Plaintiff's insubordinate acts are even disputed, and any one of them was a sufficient reason to terminate his employment. Thus, Plaintiff cannot meet his burden to show that these reasons were false.[5]

[5] On reply, Plaintiff cites to *Yazdian v. ConMed Endoscopic Techs, Inc.*, 793 F.3d 634 (6th Cir.) for the proposition that an employer cannot use "insubordination" as a reason for termination if the insubordination itself is purportedly the protected activity. *See* Doc. # 117, PageID # 3253. This case – which is conveniently omitted by Plaintiff until his reply brief – is inapposite. Plaintiff failing to abide by his administrative leave and failing to participate in an investigation of complaints against him is simply not "protected activities," nor does he provide any explanation as to how they could be. Further, for the reasons stated *supra*, it was Plaintiff's reneging on his

Plaintiff's actions after October 13, 2024, only further justified the termination of his employment. Plaintiff does not dispute he continued to violate his administrative leave, continued to access, and attempted to block, HRO from accessing its financial accounts, and changed the locks on HRO's office supplies. (*See* Doc. # 112, PageID # 3105). Plaintiff offers no excuse for his actions (nor is there any). *Id.* It is undisputed that Plaintiff's employment was not terminated until November 4, 2024. His termination letter clearly incorporated *all* of his acts of insubordination. (*See* Cauchon Dep. II, Ex. 31, Doc # 102-2, PageID # 2283-85). Nothing more is required.

As to pretext, Plaintiff's argument also falls woefully short. Plaintiff attempts to use the executive session meeting minutes from September 7, 2024, as evidence of "pretext." (*See* Doc. # 112, PageID 3106). Ironically, these meeting minutes show **<u>exactly the opposite</u>**. The meeting minutes make clear that the Board was considering terminating Plaintiff at that time because of his grossly inappropriate behavior—not because of retaliation. (*See* Doc. # 112-2, PageID #137) ("Sitting on the steps while employees are at work is not guarding his personal property in his office. **It is further intimidation and harassment** which is the exact behavior [Plaintiff] is being accused of & investigated for.") (emphasis added). Even the statement by Mr. Steward further shows the Board's concern was Plaintiff obstructing HRO's mission—not retaliation. (*See Id.*) ("Dwayne feels like we need to terminate Dennis too. If he messed with the website, Dennis **<u>actively harmed our constituency</u>**.") (emphasis added). The meeting minutes clearly show that the Board of Directors of HRO was doing everything in their power to protect the organization.

---

admitted agreement with the Board that was the "insubordination" in question, which is certainly not a protected activity.

And—even despite Plaintiff's grossly inappropriate behavior—the Board continued to exercise restraint and waited until after an investigation was complete before making any decision.[6]

***6. Plaintiff has seemingly abandoned his prior position that the Nelson investigation was a "sham."*** Plaintiff has pivoted from his original position that the Nelson report was some kind of "sham" to now challenging whether the attorney's "work supports the conclusions used to fire him[.]" (Doc. # 112, PageID # 3111). But Plaintiff cannot prove pretext by simply trying to challenge the accuracy of Ms. Nelson's report. That is not the law.

To prove pretext, Plaintiff would need to show Defendants "**made up [their] stated reasons** to conceal intentional [retaliation]." *White v. FCA US LLC*, 2026 U.S. Dist. LEXIS 53953, at *26-27 (E.D. Mich. Mar. 16, 2026) (quoting *Chen v. Dow Chem Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009)) (emphasis added).[7]

Plaintiff concedes—as he must—that the 38-page report of Ms. Nelson was not "made up." Indeed, Plaintiff admits that the investigation was quite thorough, including ninety-five (95) hours of attorney time, nine interviews, and the review of "numerous materials." (Doc. # 112, PageID # 3111). It is **not HRO's burden** to prove that its attorney was legally correct. **It is Plaintiff's burden to prove** pretext. *See Jones-McNamara v. Holzer Health Sys.*, 630 F. App'x 394, 398 (6th

---

[6] Although it is unclear, Plaintiff's brief seems to suggest that Ms. Reese's discrimination and hostile retaliation complaint was received by the Board after he was placed on administrative leave. (*See generally* Doc. # 112, PageID # 3101). This is simply false. Ms. Reese's written complaint was received on September 4, 2024, at 1:45 PM and was forwarded to the Board at 3:00 P.M. (*See* Doc. # 107-2). The Board did not meet until September 5, 2024, in which it was unanimously decided to place Plaintiff on administrative leave pending an investigation. (*See* Doc. # 102-1, PageID # 2188).

[7] The authority cited by Plaintiff for the proposition that advice of counsel does not grant immunity is inapposite. HRO does not contend that the advice of it's counsel grants it "immunity." HRO has always viewed the recommendation of Ms. Nelson under the burden-shifting framework of *McDonnell*.

Cir. 2015) (holding that it is Plaintiff's burden to "demonstrate that the defendant's proffered reason represents a mere pretext for unlawful discrimination").

Plaintiff has failed to do so. It is undisputed HRO hired a lawyer to assist in an investigation. It is undisputed that HRO's lawyer ultimately recommended Plaintiff's termination because of Plaintiff's grossly insubordinate behavior. It is undisputed HRO followed the advice of its counsel. Plaintiff has no evidence—beyond speculation and conjecture—of pretext, which is insufficient as a matter of law to meet his burden. *Thompson I.G., LLC v. Edgetech I.G., Inc.*, 590 Fed. App'x 532, 537 (6th Cir. 2014) (holding that "a nonmoving party cannot create a genuine issue of fact through 'mere speculation, conjecture, or fantasy.'") (citation and internal quotation omitted). Plaintiff's claim fails as a matter of law and undisputed fact.

## II. PLAINTIFF'S DECLARATORY JUDGMENT CLAIM FAILS AS A MATTER OF LAW.

Plaintiff was removed as an *alleged* "board member" on October 27, 2024. This undisputable fact is fatal to Plaintiff's declaratory judgment claim. This Court need not wade into Plaintiff's nonsensical argument that he had to sign his own termination letter in order to be fired. (*See* Doc # 112, PageID # 3126). But even if it chooses to do so, it is beyond dispute that Plaintiff would have an egregious conflict of interest in voting on his own termination and would not have been entitled to a vote. In any case, Plaintiff's self-interested vote to save his employment simply would not have changed any result. **<u>In all scenarios</u>**, the outcome would be the same. As such, Plaintiff's declaratory judgment claim simply lacks merit and must be dismissed for several, independent reasons.

***1. Substantial compliance is the law in Ohio.*** The Supreme Court of Ohio has made clear that in cases that do not involve a denial of rights under the U.S. constitution, substantial compliance is the law of the land. *Robb v. Chagrin Lagoons Yacht Club*, 75 Ohio St.3d 264, 268

(1996). This Court is required to follow that mandate. *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (holding that federal courts must "follow the decisions of the state's highest court when that court has addressed the relevant issue"). Plaintiff cites to no apposite authority that has either modified or changed the rule in *Robb* in his entire brief. (*See* Doc. # 112, PageID # 3115-29). The Supreme Court of Ohio's decision stands.[8]

***2. Plaintiff concedes—as he must—that he received notice of the October 27, 2024, meeting and had an opportunity to be heard.*** Under controlling Ohio law, the purpose of the "substantial compliance" standard is fulfilled where, as here, a party had actual "notice and an opportunity to be heard." *Robb v. Chagrin Lagoons Yacht Club*, 75 Ohio St.3d 264, 268 (1996). **Nothing more is required.**

Plaintiff offers this Court with no coherent explanation as to why it should ignore the Supreme Court of Ohio and apply a different standard here. It is abundantly clear that the sole purpose for Plaintiff "objecting" to notice of the meeting was simply to obstruct the Board. Where, as here, there is no dispute: (1) Plaintiff **requested** the meeting, (2) Plaintiff received **actual** notice of the meeting, (3) Plaintiff **appeared** at the meeting, and (4) Plaintiff was given the unfettered opportunity to **speak and plead his case** at the meeting, the purpose of the notice provision was fulfilled. (*See* Cauchon Dep. II, Doc. # 102-2, at 20:25-23:21); (Steward Dep., Doc. # 103-2) (confirming notice and link sent on Oct. 15, 2024); (Turner-Bicknell Decl., Ex. A-11, Doc. # 107-12) (board meeting minutes confirming board members' attendance and memorializing Plaintiff's statements).

---

[8] Plaintiff attempts to distinguish *Robb* by arguing that the organization had different notice rules. (Doc. # 112, PageID # 3122). This is non-responsive. The Supreme Court of Ohio nonetheless adopted a substantial compliance standard and Plaintiff has no authority to the contrary. *Id.*

***3. Plaintiff's arguments as to waiver are irrelevant***. Plaintiff cites to no authority in support of his position that—in the absence of waiver—strict compliance to the Bylaws is required. HRO is not even asserting that Plaintiff waived notice. As such, the issue of waiver is entirely irrelevant. In the absence of any waiver, substantial compliance is the law. *Robb v. Chagrin Lagoons Yacht Club*, 75 Ohio St.3d 264, 268 (1996).

***4. Plaintiff was not entitled to an agenda.*** Next, Plaintiff contends that HRO did not substantially comply merely because the Board didn't provide him with an agenda in advance of the October 27, 2024, meeting. (*See generally*, Doc. # 112, PageID # 3122-24).

This argument is easily dismissed. HRO's Bylaws do not mandate an agenda in its notice provisions. (*See* Doc. # 102-1, PageID # 2044, Article III, Section 3, and Section 10). Even if it had, Plaintiff cites no authority for the untenable proposition that all board meetings are somehow invalid without an agenda. This is particularly true where, as here, Plaintiff himself was the one that demanded the meeting. This argument is simply meritless.

***5. The October 13, 2024, meeting is irrelevant.*** HRO does not contend that Plaintiff was terminated as a result of the October 13, 2024, meeting. Thus, there is no "existing case or controversy" for this Court to resolve and Plaintiff is not entitled to an advisory opinion as to the validity of a meeting that is not even at issue. *Niepsuj v. Giulitto*, No. 20-3077, 2020 U.S. App. LEXIS 34657, at *4 (6th Cir. Nov. 2, 2020) (holding that, where an issue was moot, "a declaratory judgment would be nothing more than an impermissible advisory opinion.") (citing *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 715 (6th Cir. 2011) ("The 'case or controversy' requirement prohibits all advisory opinions . . . .")).

***6. Plaintiff is not entitled to a declaratory judgment as to the validity of his administrative leave.*** Plaintiff's arguments as to his administrative leave are simply non-

responsive and nonsensical. (*See generally* Doc. # 112, PageId # 3127). HRO's argument is that a declaratory judgment as to the validity of Plaintiff's administrative leave is improper because there is no longer a case or controversy to resolve as Plaintiff **is no longer on administrative leave**. (*See* Doc # 107, PageID # 2980-81). In response, Plaintiff simply says that the meeting is still "relevant," because Defendants purportedly "rely" on it to justify his termination. (Doc. # 112, PageID # 3127).

This argument doesn't make sense. Just because Plaintiff contends that his administrative leave is "relevant" *to his FCA retaliation claim* does not mean there is an existing case or controversy for the Court to resolve via *declaratory judgment*. To the extent Plaintiff is attempting to use his declaratory judgment claim to prove an element of his FCA retaliation claim, dismissal is still appropriate, as his request for declaratory judgment would be duplicative and therefore outside the purview of the Declaratory Judgment Act. *See Jerome-Duncan, Inc. v. Auto-By-Tell, LLC*, 176 F.3d 904, 908 (6th Cir. 1999) ("it is clear in the present case that declaratory judgment would be redundant with the relief already sought for breach of contract"); *McGlone v. Centrus Energy Corp.*, 2020 U.S. Dist. LEXIS 135784, at *16 (S.D. Ohio July 31, 2020) (dismissing claim for declaratory judgment as duplicative of plaintiff's claim for breach of contract); *Waldren v. Allstate Vehicle & Prop. Ins. Co.*, 2020 U.S. Dist. LEXIS 159161, at *9 (S.D. Ohio Sept. 1, 2020) (same); *Transworld Delivery, Inc. v. Fleurop Interflora*, 261 F. Supp. 2d 837 (E.D. Mich. 2003) (same); *Pakideh v. Ahadi*, 99 F. Supp. 2d 805, 809 (E.D. Mich. 2000) (same).

***7. The November 4, 2024, unanimous action by the Board was valid and effective to terminate Plaintiff's employment.*** Plaintiff does not challenge the authority of the Board to terminate his employment via an action in writing. Indeed, he concedes that R.C. 1702.25 permits the Board to take such an action. (*See* Doc. # 112, PageID # 3126). His only argument appears to

be that he was required to sign his own termination letter for R.C. 1702.25 to apply. (*Id.*). This is meritless.

*First*, the October 27, 2024 meeting was effective to remove him as any alleged "director." Thus, he would not have been titled to a "vote" as of November 4, 2024, anyway.

*Second*, Plaintiff has no response to the fact that he had a clear conflict of interest in voting on his termination. He further fails to respond to the authority that he was required by law to abstain from participation. *See, e.g.*, *In re Tri-Star Pictures Litig.*, 1995 Del. Ch. LEXIS 27, at *10 (Del. Ct. App. 1995) (holding that when a director "[has] a conflict of interest relating to a proposed transaction," they have a fiduciary duty to "**abstain from participating in the board's consideration**[.]") (emphasis added). As he was not entitled to a vote, Plaintiff's contention that he could stonewall the board from action by refusing to vote on his own employment is simply without merit.

## III. CONCLUSION

Plaintiff's opposition brief only further confirms that his FCA retaliation and declaratory judgment claims fail as a matter of law. Accordingly, Defendants request that its Motion for Summary Judgment be granted, and Plaintiff's claims dismissed, at the earliest opportunity.

Respectfully submitted,

*/s/ Steven A. Chang*
Steven A. Chang, Esq. (Trial Attorney) (0088321)
Melvin J. Davis, Esq. (0079224)
Mrinali Sethi, Esq. (0101295)
Reminger Co., L.P.A.
200 Civic Center Drive, Suite 800
Columbus, Ohio 43215
(614) 228-1311; FAX: (614) 232-2410
mdavis@reminger.com
schang@reminger.com
msethi@reminger.com

*Counsel for Defendants Dwayne Steward, Raina (William) Golden and Tasha Turner-Bicknell*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that said filing will be served via the Court's CM/ECF system upon Plaintiff, *pro se*, and all counsel of record.

*/s/ Steven A. Chang*
Steven A. Chang (0088321)